## No. 9964.

### THE STATE OF LOUISIANA VS. A. FERNANDEZ.

Act 18 of 1886, commonly known as the *Sunday Law,* operates uniformly throughout the State, and cannot be construed so as to authorize to be done, in one place, on Sundays, that which it forbids to be done, on that day, in *all other* places.

State vs. Fernandez.

Whoever claims an immunity from the operation of a general law, must prove it with certainty. Exemption laws must be strictly construed. In such cases. *doubt is fatal.*

Grocery *stores*, required to be closed on those days, outside of a public market, cannot be allowed to be opened, as stands, on those days in such markets, in the absence of express legislation authorizing the same.

The exemptions from the operation of the law, enumerated in Section 3 of the act, cannot be extended so as to include cases not within legislative contemplation.

APPEAL from the Criminal District Court for the Parish of Orleans. Roman, J.

*M. J. Cunningham*, Attorney General, for the State, Appellee.

*Blanc & Butler* for Defendant and Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The defendant was prosecuted for violating the provisions of Act 18 of 1886, commonly known as the "*Sunday Law.*"

The information charges that, on Sunday, the 27th day of February, 1887, he did unlawfully open a certain establishment and place of business called a *grocery*, which, by law, is required to be closed at twelve o'clock on Saturday nights, and to remain closed continuously for twenty-four hours; and that, being the proprietor of such establishment, he then and there did unlawfully give, trade, barter, exchange and sell certain portions of the stock and certain articles of merchandise kept in such establishment and place of public business, contrary to the form of the statute, etc.

On a first prosecution the accused pleaded guilty and was fined $25, but on the present prosecution for a *second* violation he pleaded by demurrer.

He there averred the acts charged, averring, however, that keeping a grocery and selling groceries in a public market, wherein the like was kept and sold, of time immemorial, is no offense under the law.

On issue joined by the State, the case was tried. The court, for elaborate reasons forcibly expressed, overruled the plea and imposed a fine of $305 on the accused, who excepted to the ruling and appealed from the sentence.

So that, the question presented here is simply: Whether a grocery establishment can or not be legally opened on Sundays, in a public market in which such establishments, for time immemorial and on all days, have been, up to the adoption of the law, habitually kept?

In order to ascertain the legislative intent, it is essential to analyze as well the sections as the title of the statute. (Act 18, p. 28, of 1886.)

An attentive consideration of these satisfies the mind that they are all substantially expressed in the title, which reads as follows:

"An Act requiring all stores, shops, *groceries*, saloons, and all places of public business, which are or may be conducted under any law of the State of Louisiana, or under any parochial or municipal law or ordinance, except those herein exempted, to be closed on Sundays; and forbidding all giving, trading, bartering and selling on Sunday by the proprietors or employes of such establishments, declaring it a misdemeanor to violate the provisions of this act and to fix penalties for all violations of the same; and to repeal all laws or parts of laws contrary to or inconsistent therewith."

The defense, however, is, that as Section 3 declares that the provisions of the act shall not apply to *public markets*, and as the grocery establishment in question was opened in a *public market*, in which such establishments have, at all times, been kept, the opening of a grocery stand in such place of public business, on Sundays, is not only not prohibited, but impliedly allowed and authorized.

The defense is untenable.

It is apparent that, but for the saving clause under which the accused seeks shelter, he could not pretend to be exempt from the operation of the law, for the obvious reason that, had he opened his grocery elsewhere than in a public market, he would assuredly be amenable to the statute.

Equality of rights, privileges and capacities unquestionably should be the aim of the law. If special privileges are granted, or special burdens or restrictions imposed, in any case, it must be presumed that the Legislature designed to depart as little as possible from this fundamental maxim of government.

The State has no favors to bestow, and intends to inflict no arbitrary deprivation of rights. Special privileges are always obnoxious, and discriminations against persons or classes are still more so. As a rule of construction, it is to be presumed that they were probably not contemplated. Cooley on Const. Lim., No. 493 (pp. 493–4), 4th ed.

When the General Assembly, for reasons not disclosed, deemed proper, in the exercise of the police power possessed by the State, to require, under penalties, the closing on Sundays of places of public business, the object in contemplation was the shutting up, on Sundays, of *all* stores and places of business, not exempt, irrespective of locality, by a uniform legislation, operating throughout the State.

The Legislature would not, and did not, design to require such closing on Sundays in one or more places and permit the opening of similar stores and establishments at other places, on the same day. Such legislation would have been unjust, odious, despotic and oppressive.

If it be true, as alleged by the defendant, that groceries have always been kept, on Sundays, in the public markets of the State, it is equally so that such establishments have also been kept at all other places.

It cannot be inferred, however, from that circumstance that, although the State has required generally the shutting up of all such places, she has, by implication, exempted from the closing, and therefore authorized the opening, of grocery establishments kept in *public* markets.

The argument, it would seem, rather militates the other way; for no reason is adduced why the closing should not be uniform, or why certain places should be shut while others remain open, simultaneously, on Sundays.

The principle is established beyond question, that whoever claims an exemption or immunity from the operation of a general law, must prove it with certainty, as exemption laws must be construed strictly. In such cases, doubt is fatal.

It was incumbent, therefore, on the defendant to have established, from the letter or spirit of the law; that although the shutting of a grocery outside of a public market on a Sunday be commanded as a general thing, the opening of it in that place, on such day, is formally sanctioned by law; but he has failed to do so.

Had it entered the legislative intent to allow the opening of a grocery stand or establishment on a Sunday, in a public market, when such opening is forbidden elsewhere on that day, it would have said so; but it has remained perfectly dumb on the subject.

It is not competent for the judicial power to engraft unauthorized and unjustifiable exceptions on exceptions considerately made by the law-giver.

However liberally construed be the exemptions enumerated in Section 3 of the act, they cannot be legitimately stretched so as to extend the immunity to grocery establishments in public markets.

Ruling differently would be doing violence to the tenor and purport of the law and to throw a door wide open, in *public* markets, to all business clearly prohibited beyond their limits.

We have deemed it unnecessary to enter into any discussion of the meaning of the words "*public markets*," as we considered that whatever the signification be, it cannot be invoked to justify the attitude of defendant, that what is required to be done generally throughout the State, regardless of locality, is not exigible within the precincts of a public market.

We, therefore, conclude that the law does not authorize the opening, on Sundays in public markets, of grocery establishments which are *all*

required uniformly to be closed elsewhere on such days, and we consider that the demurrer set up by the accused was properly overruled.

Judgment affirmed.

## ON REHEARING.

The Court has been charged with misunderstanding and misapplying the law, and so, with having inflicted disastrous damage on the city of New Orleans. It has been pressed to recant its opinion and decree, and decide that a "*public market*" is a "*public market.*"

The Court did not misconceive the law. It would not suppose in the Legislature the design to make odious and unconstitutional discriminations between citizens belonging to the *same class.* It could not impute to the General Assembly the intention to allow to be done, under the roof, or *within* the limits of a public market, that which it absolutely prohibits, under pains and penalties, one line *beyond* that roof or those limits. It could not conceive that it was the legislative will to discriminate between the public markets in *New Orleans* and other markets at *different places in the State.*

The Court had no concern with what constitutes a public market. It has none now. It had to decide, under the demurrer and the replication, whether the defendant was or not amenable to the accusation against him.

It concluded that the defendant was keeping on a Sunday, *within* the market, that which he could not keep, and was bound to close *out* of it---a place of public business, at which he dealt in grocery articles; in other words, a grocery stand or stall; and that the fact constituted the offense and justified the infliction of the penalty.

There is some pretense that the defendant is not required to pay a license for keeping a grocery stand in the public market. Whether the license be actually levied by State or city, in the sense of requiring payment of it, is immaterial. The law imposes, or may impose the license, and the statute under consideration requires the closing on Sundays of all places of public business, even plantation stores, which are, or may be licensed, under the law of the State, or under a parochial or municipal ordinance.

If, then, the Legislature has required the closing on Sundays of all places of public business, which are or may be licensed, and if such places of business within public markets are, or may be licensed, the conclusion is irresistible, that the defendant is not shielded from the operation of the prohibitory and penal provisions of the law, and his case falls within their purview and ban.

State vs. Fernandez.

When, therefore, the Legislature removed or exempted public markets from the operation of the law, keeping in view the equality of rights of the citizens —they meant such public markets, *within* the limits of which goods were not sold, or places kept open, which are forbidden from being sold or are required to be closed, *beyond* their boundaries.

If the ruling has operated harshly, as is represented, it is a consequence which must have entered into the legislative consideration before the Legislature solemnly expressed their behest, and which this Court is powerless to avert.

If the "*Sunday law*" be harsh but constitutional, it must be enforced. *Dura lex, sed lex.*

This Court has deliberately held that the "Sunday law" violated no constitutional prohibition on the power of the General Assembly, and is obligatory. The courts have to enforce its commands.

This Court cannot be asked to blow hot and cold in the same breath, and it cannot do so.

It is, therefore, ordered that our previous decree herein remain undisturbed.

Fenner, J., dissents.

_____

### CONCURRING OPINION.

POCHÉ, J. The object of the "Sunday law," as expressed in its title, is to require " all stores, shops, groceries, saloons, and all places of public business, which are or may be conducted under any law of the State of Louisiana, or under any parochial or municipal law or ordinance, * * to be closed on Sundays."

It is undeniable that, under its provisions, all dealers in groceries must close their establishments on Sundays, but the city of New Orleans, intervening herein for the protection of its market lessees, contends that dealers in groceries in the public markets are not reached by the law, but that they are protected by Section 3 of the act, which provides that the law shall not apply to public and private markets.

Nothing in the language of the act, or in the spirit of the legislation, suggests the slightest legislative intention to make such a discrimination, and it is difficult to conceive of any reason which could justify a distinction between the act of selling groceries in a store, house, or shop, and selling the same kind of goods in the public market of a city or town.

In the case of the State *ex rel.* Walker vs. Judge, recently decided by this Court (Southern Reporter, Vol. I, p. 437), which involved the alleged unconstitutionality of the Sunday law, the point was made by relator's counsel, who argued that the law was not uniform or equal in its prohibitions, and particularly in its exemptions, on the ground, among others, that grocery stores were required to close on Sunday while dealers in groceries in the public markets were allowed to carry on their business on the same day. To that contention this Court answered: " The objection has not the slightest force. The law is not unequal in any constitutional sense. No person in the State is permitted to purchase any of the prohibited callings on Sunday. *  *  * It is enough to say that the law does not expressly grant such privilege, and it will be time enough to determine whether, under a proper construction of the law, it exists, when a case directly involving the question is presented." That case is now before the Court, and having sustained the law as constitutional, because, under a proper construction, it was not amenable to the charge that it permitted certain persons to pursue some of the prohibited callings on Sunday, we are now asked by the defense to allow the selling of groceries in the public markets on Sunday, under the very law which avowedly prohibits that very act, in all other places, all over the State. Could we consistently make such a ruling?

We sustained the law simply because it was the legislative will, not violative of any restriction in the Constitution, and we have no more reason, by construction, to limit or restrict its intended effect, so as to avert any resulting inconveniences, than we had to declare its nullity as a whole. No reason can be invoked to authorize, under the law, the selling of groceries in the public markets of New Orleans, which would not, at the same time, justify the selling of the same kind of goods in stores where the same are universally sold in the city, as well as in all other localities in the State.

Guided by respectable authority, this Court rested the action of the Legislature in adopting a Sunday law, on the following considerations, deriving their efficacy from the exercise of the police power; " It is claimed that, from physical causes, men require respite from intellectual and physical labor in the proportion of one day's rest in seven, and that a law which enjoins this is not only for the aggregate good of society, but for the benefit of all the members. It is said that the labor of six days, with this relaxation, is more productive in the long run than the uninterrupted labor of the week. It is said, besides, that this law affords, indirectly, protection against oppression to

State vs. Fernandez.

employes—women, apprentices and servants—and that, but for the law, men would keep open stores and shops because their neighbors did so, and that, by competition, a sort of compulsion exists to violate the laws of health."

Hence, there is no force in the argument based on the great inconvenience to the people of this city, who would, by the unexceptional enforcement of the law, be deprived of the privilege of purchasing certain grocery articles on Sunday, which articles had been from time immemorial sold in the public markets of New Orleans. The sale of such articles in grocery stores, especially in the proverbial " corner grocery," certainly antedates that custom, and yet the Legislature did not hesitate to destroy that " greater convenience." And no reason is apparent, from the language of the act, or in the argument of defendant's counsel, to indicate the slightest legislative intent to spare the other or *lesser* convenience. A Sunday law does not deal with conveniences ; it is avowedly an invasion on all conveniences on Sunday. It seeks, with an iron hand, to enforce obedience to a principle by means of a rule which is unbending, except when confronted by necessity.

Hence, to be constitutional, it must make or countenance no discrimination between persons pursuing the same calling, and, therefore, it cannot be construed, as contended for, as making a distinction when there exists no difference.

It would, indeed, be too violent a presumption to suppose that under the guidance of the considerations which underlie all Sunday laws, our legislators could have conceived the opinion that dealers in groceries under a market shed did not need as much rest as vendors of groceries in stores ; or that, unlike the latter, the market grocery dealers could not have made their business as productive in the long run, with the labor of six days, as " with the uninterrupted labor of the week," or that, in the absence of a Sunday law, the employees of the market grocer would have been less exposed to the oppression of their employers than those of the grocer in the store.

No more is our law-maker amenable to the charge of contemplating the convenience of the poorer classes in New Orleans by means of a permission to buy certain articles of groceries in the markets on Sundays, at the same time (and by means of the same law) that he peremptorily ordered the closing on Sunday of " all plantation stores," which are the only market within the reach of more than three hundred thousand laborers in the cotton, rice and sugar fields of

35

Louisiana, who yield to no other class in this city in the need of relaxation of the rule for conveniences on Sunday.

There is no more force in the argument that our construction of the Sunday law will cause great losses to the city of New Orleans in her market revenues.    This Court never shrinks from the legitimate responsibility of its own acts.    But it is easily conceived that such a responsibility cannot rest on the shoulders of the judiciary, who is powerless to avert the evil resulting from bad laws, as long as the same cannot be annulled as unconstitutional.

The remedy must be sought at the hands of the law-making power which alone has the authority to repeal obnoxious or unwise legislation.

For these reasons, and for those contained in the opinion prepared by the Chief Justice, I concur in the decree herein rendered.

## DISSENTING OPINION.

FENNER, J.    The accused appeals from a conviction of the offense of violating Act No. 18 of 1886, known as the Sunday Law, by selling in a public market of the city of New Orleans, articles of human food known as groceries.

The ordinances of the city of New Orleans establishing and regulating its public markets, have, from a remote period, and do still, authorize the selling therein of all articles of human food, including such groceries.. Jewell's Digest, pp. 268 and 269.

The article of the ordinance now in force provides "that all kinds of meats, fowl, game, fish, vegetables, and *all other articles of human food* may be bought and sold at the public markets, etc."

The 1st section of Act 18 provides that "all stores, shops, saloons and all places of public business, etc., are hereby required to be closed at twelve o'clock on Saturday nights, and remain closed continuously for twenty-four hours, etc."

Section 3 declares "that the provisions of this Act shall not apply to �owⸯ * public and private markets, etc."

I quite agree with the learned judge *a quo* that, in interpreting this exemption, we are to search for and give effect to the probable and reasonable intent of the legislature, in employing the terms "public and private markets."

If it should happen that in some particular town or city of the State the local municipal ordinances authorized the sale of dry goods, woodenware and all other articles of commerce in the public market, I

should not consider that such traffic was within the exemption contemplated by the legislature.

We are to infer that, in exempting public markets, the legislature meant public markets as commonly and customarily organized and covering the kind of traffic ordinarily authorized and conducted in such markets.

We have seen that, at the time of the passage of this law and long before its passage, the public markets of this city, the most prominent and generally known of all in the State, were established for the purchase and sale of "all articles of human food."

We are not advised whether or not public markets as organized in other towns and cities embrace like privileges; but I think we may say that generally, at least in cities, they do, and that anyone would expect to find in them such articles as butter, lard, cheese, bread, rice, meal, salt meats and other like articles of daily consumption for human food, and that a market where such things could not be procured would illy serve the convenience of the people for which they are established.

We are referred to two *dicta* by this Court on the subject which confirms this view. In one case the Court defines a public market to be "a place to which the public have free admission for the purpose of purchasing provisions." Heirs of David vs. N. O., 16 Ann. 407.

In another, Chief Justice Merrick said, a market "is a place to which all persons have a right to resort daily, to supply themselves with such provisions and necessaries as are there vended."

The learned counsel for defendant also quotes the language of the Supreme Court of Ohio, viz: "A municipal market constitutes 1st., any place for the sale of provisions and articles of daily consumption; 2d., convenient fixtures; 3d., a system of police regulations, fixing the market hours, making provisions for lighting, watching, cleaning, etc.; 4th., proper officers to preserve proper order and enforce obedience to the rules." Cincinnati vs. Buckingham, 10 Ohio, 257.

These expressions indicate, as I think, the legal and popular idea of the ordinary, modern, municipal market, to which, undoubtedly, the legislature referred.

I can discover no reason or authority to confine the term to the narrower meaning of a place for the sale of fresh meats, fresh fish, game, poultry, vegetables and fruit exclusively, as adopted by the judge *a quo* and contended for by the State, on the ground that such articles must be procured on the day upon which they are used.

Many vegetables and fruits, such as potatoes, cabbages, onions, beans, apples, oranges, lemons, bananas, etc., are quite as free from

any necessity of being procured on the day of use, as are lard, butter, cheese, etc., which fall under the denomination of groceries.

We are to remember, too, that the wants of all classes of people are to be considered. The poor man, who receives his wages on Saturday night, has not always been able to provide his Sunday dinner in advance. When he goes to market on Sunday morning, his scanty purse may not afford the luxury of fresh meat, fresh fish and game. Shall he be deprived of his rasher of bacon or cut of cheese? The careless housekeeper may have forgotton to replenish her store of butter, or lard, or meal, or rice, or salt and pepper? Shall her Sunday dinner be, therefore, spoiled?

I feel safe in holding that the public markets, as established in New Orleans for the sale of all articles of human food, are not exceptional and fall clearly within the exemption intended and expressed by the legislature. I have not found, or been referred to, any definition of a public market by any lexicographer or other authority, placing a more restricted meaning on the term than I have now given it; and, on the contrary, they generally assign to it a more extensive significance. Bouvier's Law Dic. *Verbo*, Market; Webster's Dic. Id.; Richardson's Dic. Id.; Worcester's Dic. Id.

They all agree that it is a place for the sale of "provisions."

Not only have the people a direct interest in having this exemption sustained; but the city of New Orleans has a like interest, and has appeared, at our bar, through her law officer, in support of it.

It directly affects the city's revenues which are, to a considerable amount, derived from the leases of these markets, which have been executed upon the faith of their *status* as recognized by law, and the consideration thereof would be sensibly impaired by the change in that *status* for which the State now contends.

I discover no force in the argument that, because the exemption applies equally to "*public* and *private* markets," therefore only the traffic authorized in private markets should be considered as authorized in public markets. A private market is one thing, a public market is another. Each is separately regulated by law, and must stand on its own footing. The exemption extended to both neither enlarges nor diminishes the privileges of either.

It is claimed, however, that the construction now given to the law would render it, to that extent, unconstitutional, because, in permit-

ting persons occupying stalls in the market to sell groceries on Sunday, while denying the like privilege to other dealers in groceries, it would violate the right of the latter to that equality of rights and privileges which is secured by the constitutional provisions, guaranteeing to all citizens the "equal protection of the laws." But it is well settled that these provisions do not prevent the Legislature from determining whether "a particular rule shall extend to all its citizens only," and that "all that can be required in such cases is that the laws shall be general in their application to the class or locality to which they apply." Cooley Constitutional Lim. 4 Ed. pp. 488–9. The occupant of a stall in a public market, who, for the public convenience, is allowed to sell those special kinds of groceries used for human food, within certain limited hours of each day (viz: under present ordinances, between the hours of 6 and 10 a. m.) and subject to all other market regulations and police control, certainly belongs to a very different class from the ordinary private dealer in groceries, who occupies and controls his own store, who sells there, or may sell, not only articles of human food, but many other articles ordinarily embraced in the grocers' stock in trade, who opens and closes at his pleasure, and whose business is subject to no peculiar police control and regulation. If they belonged to the same class, with much greater force might the market vendor complain that his constitutional rights were violated because he was compelled to close his establishment every day at 10 o'clock a. m., while other grocers were at liberty to keep open all day.

They belong to totally different classes. No law forbids any grocer from renting a stall in the public market, if any be vacant, and acquiring the same privileges accorded to that class of citizens. There is no discrimination between citizens, but only between different classes of citizens, classes equally open to all, and the discrimination is based upon obvious considerations of public policy and convenience, which amply support and justify it.

For all the foregoing reasons I think the Court has placed too narrow a construction on the law, one not contemplated by the Legislature, hostile to the interests of the city and to the convenience of the people, and calculated, if enforced, to make the law odious by subverting the very public convenience which the exemption was obviously intended to subserve.