No. 13,880.

LIQUIDATING COMMISSIONERS OF THE NEW ORLEANS WAREHOUSE COMPANY VS. L. H. MARRERO, TAX COLLECTOR, ET ALS.

## SYLLABUS.

1.  Each annual assessment of property for taxation is a separate entity, distinct from the assessment for the next, and subsequent years. What may be a proper valuation one year may not be the next year, and, thus, a judgment decreeing at what figure a piece of property should be assessed *last* year for purposes of taxation is not *res judicata* as against another valuation placed thereon by the proper authorities *this* year.
2.  The law contemplates that each year a tax-payer's property is subjected to excessive assessment he should sue, and this is shown by the circumstance that he is not permitted to sue to reduce an assessment unless he shall have made his complaint seasonably before the Board of Reviewers and failed of relief there.
3.  And this bringing of the matter before the Board of Reviewers must be done each time his property is assessed—that is to say each year—and his action to test the correctness of his assessment, if he fail before the Board of Reviewers, must be instituted on or before the first day of November of the year in which the assessment is made.
4.  The commission of ten per cent. upon the amount of taxes to be collected, allowed by statute to the attorney representing the tax-collector, and to be paid by the unsuccessful tax resister, is regarded as costs.
5.  The right to costs as depending upon the nature of the suit, or upon other circumstances, has always been within the regulation and control of the legislature, exercising its discretionary power, not oppressively to either party, but as the best interests of the litigants and of the public may appear to it to demand.
6.  And the constitutionality of statutes allowing one party only to a litigation to recover an attorney's fee, as part of the judgment, in particular classes of actions selected by the legislature, appears to have been upheld by the courts of most of the States, in which it has been challenged.
7.  The case of Ry. Company vs. Ellis, 165 U. S. 150, differentiated from the case at bar, and held not to be an authority in point.
8.  While the law recognizes and permits partial payments on taxes, it must be upon a reasonable showing made and some reasonable basis of calculation adopted. The tax-debtor may not arbitrarily select a given sum out of the

total amount of taxes the rolls show he owes, and expect the tax-collector to receive it as a partial payment. No; the collector would do right to refuse such payment and proceed to enforce collection of the whole amount with penalties added.

APPEAL from the Twenty-Eighth Judicial District, Parish of Jefferson—*Gaudet, J.*

*James D. Seguin, (Parkerson & Tobin,* of Counsel), for Plaintiffs, Appellants.

*Robert J. Perkins,* for Defendants, Appellees.

The opinion of the court was delivered by

BLANCHARD, J. This was a suit to enjoin the sale of plaintiffs' property for taxes for the years 1898 and 1899. There had been a failure on part of plaintiffs to pay the taxes and the tax collector had advertised the property for sale in the effort to enforce payment.

The preliminary order of injunction issued and the sale of the property was temporarily stayed; but on trial of the merits the injunction was set aside and the tax collector was directed to proceed to sell the property for the taxes due thereon for 1898 and 1899, with the statutory interest, costs and penalties added.

Plaintiffs appeal.

The petition sets up that the taxes as assessed, levied and claimed are unconstitutional, illegal and void.

Many grounds for this assertion are averred. Among them the following are merely mentioned to be dismissed, since nothing appears of fact or law to give them any standing in the forum of discussion, to-wit:—improper and inadequate description of the property on the assessment rolls; assessment not returned in the name of the true and actual owners; want of notice of delinquency prior to proceeding to sell the property; want of proper legal form and manner of advertisement of the property.

A ground which does merit discussion is:—over-assessment, or excessive assessment of the property, and, in this connection, the plea of *res judicata* tendered as to amount at which the assessment for the years 1898 and 1899 should be fixed.

And defendants claiming, in their answer, the legal penalties and costs incident to tax litigation, including 10 *per cent.* on the total

amount to be collected as fees for the attorney representing the tax-collector, plaintiffs urge as against the percentage claimed for the attorney that the same is a charge violative of certain Articles of the State Constitution and of the 14th Amendment of the Constitution of the United States.

Thus narrowed down the action is found to be one seeking redress for what plaintiffs consider an over-assessment of their property for taxation for the years mentioned, and a defense on their part against the attorneys' fees asserted under the statute in favor of counsel appointed to assist the tax collector in his duties.

## I.

In a former suit brought by plaintiffs against these same defendants for reduction of assessment on the same property *for the year 1897*, the District Court rendered judgment reducing the assessment from $60,000 to $45,000, and it is this judgment which plaintiffs pleaded as a bar to any larger assessment against the property for 1898 and 1899.

The answer to this is (1) that the judgment in that suit has not yet become final, the cause having been appealed by defendants to the Court of Appeals and being still pending there; (2) but even if this appeal does not effect the right to plead the judgment as *res judicata* and estoppel, the judicial ascertainment and fixing of the proper amount of the assessment on the property in question for the year 1897 does not have the force and effect of the thing adjudged so far as assessments on the same property for *subsequent* years are concerned.

Assessments are made each year. Each annual assessment is a separate entity, distinct from the assessment for the next and subsequent years. What may be a proper valuation one year may not be the next year, and, thus, a judgment decreeing at what figure a piece of property should be assessed *last* year for purposes of taxation is not *res judicata* as against another valuation placed thereon by the proper authorities *this* year.

The law contemplates that each year a taxpayer's property is subjected to excessive assessment he should sue, and this is shown by the circumstance that he is not permitted to sue to reduce an assessment unless he shall have made his complaint seasonably before the Board of Reviewers and failed of relief there.

And this bringing of the matter before the Board of Reviewers must

TERM OF 1901-1902. 133

Liquidating Commissioners, etc., vs. Tax Collector et als.

be done each time his property is assessed—that is to say each year—and his action to test the correctness of his assessment, if he fail before the Board of Reviewers, must be instituted on or before the first day of November of the year in which the assessment is made. Secs. 24, 25, 26 of Act No. 170 of 1898, pp. 359, 360, 361.

The present suit, which is held to be one having for its object the reduction of the assessment on their property for 1898 and 1899, was not instituted by plaintiffs until October 1900, when, as to the assessment for 1898, it should have been brought on or before November 1st of that year, and, as to the assessment for 1899, on or before the same date of that year.

But more than this. No effort, either in 1898 or 1899, was made by plaintiffs before the Board of Reviewers to obtain relief from alleged over-assessments, and this being so, no basis has been laid for the suit. State ex rel. Johnson vs. Tax Collector, 39 La. Ann. 538; Oil Co. vs. Assessor, 48 La. Ann. 1358; Brewing Co. vs. Assessors, 41 La. Ann. 565; Hoffman vs. City, 39 La. Ann. 206; Red River Line vs. Parker, 41 La. Ann. 1046.

Again, the judgment of the District Court, in the cause instituted in 1897, reducing the assessment on plaintiffs' property for that year, which judgment is pleaded as res judicata, was not rendered until May 1900, long after the assessment on the property for 1898 and 1899 had been returned, and long after the expiration of the time in each year when plaintiffs should have sought relief from the Board of Reviewers.

Was the assessor to wait the determination of that suit before making his assessments on the property in question for 1898 and 1899? No; for had he done so he would have been omitting from the rolls property subject to taxation and which it was his duty to assess.

After the 1897 suit was decided by the District Court in May 1900, and a reduction decreed on plaintiffs' property from $60,000 to $45,000 for the year 1897, was the assessor and tax-collector to revise the rolls of 1898 and 1899 by striking therefrom the assessment on the property of $60,000 for each of those years and making it $45,000? No; for the reason that the 1897 case had been taken by appeal to a higher court, and for the further reason that after the tax rolls are finally completed and filed the tax assessor is without authority to revise them (50 La. Ann. 1059), and after the same have reached the tax-collector's hands that official is equally powerless to either revise or reduce the assessments.

Could the Board of Reviewers, after the decision of the 1897 suit, reconvene and reduce the assessment on the property for 1898 and 1899? No; because the Board had sat *at* the appointed time and *for* the appointed time on the assessments for those years, had exhausted their powers in regard thereto, the rolls had passed from their hands into those of the tax-collector, and there was no power in the Police Jury to recall them in 1900, and, resolving again into a Board of Reviewers, revise assessments for 1898 and 1899.

We conclude, on this branch of the case, that plaintiffs are without standing herein to contest the assessment of $60,000 on their property for each of the years 1898 and 1899.

If they have, by their inaction, permitted the door of relief to be closed on them, they alone are to blame. 41 La. Ann. 567 (Brewing Co. vs. Assessors).

## II.

The second paragraph of Sec. 56 of Act 170 of 1898 provides that the attorney at law, who represents the tax-collector in an injunction proceeding wherein the tax-collector is sought to be restrained from collecting taxes, shall receive a commission of ten per cent. on the amount to be collected, to be paid by the plaintiff who is cast in the injunction. This commission is regarded by the statute as costs and is directed to be collected by the tax-collector at the time the taxes and other penalties are collected.

This commission is claimed herein by the tax-collector for his attorney. Plaintiffs resist it, alleging it to be repugnant to certain Articles of the State Constitution and Sec. 1 of the 14th Amendment of the Constitution of the United States.

The Articles of the State Constitution to which the provision of law is asserted to be obnoxious are Nos. 6 and 225. The first declares that:—

"All courts shall be open, and every person for injury done to him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay."

In the second (Art. 225) is embodied the declaration that "tax-payers shall have the right of testing the correctness of their assessments before the courts of justice."

It suffices to say that the force of the argument, which deduces from either of these provisions of the organic law anything militating against

the power of the Legislature to enact the second paragraph of Sec. 56 of the Act of 1898, is lost upon us.

It is now, and has been for years, of the administrative policy of the State to appoint (it is done by the Governor) attorneys to aid the collectors of taxes in the work of collecting the public revenues. These attorneys have no compensation except that which the law permits to be taxed as costs against the *unsuccessful* tax resister. It applies to all, whether corporations or individuals. There is no discrimination.

The right to costs as depending upon the nature of the suit, or upon other circumstances, has always been within the regulation and control of the Legislature, exercising its discretionary power, not oppressively to either party, but as the best interests of the litigants and of the public may appear to it to demand. Lowe vs. Kansas, 163 U. S. 81; Green vs. Liter, 8 Cranch, 229, 242; Kneass vs. Schuylkill Bank, 4 Wash. C. C. 106.

And the constitutionality of statutes allowing one party only to a litigation to recover an attorney's fee as part of the judgment, in particular classes of actions selected by the Legislature, appears to have been upheld by the courts of most of the States in which it has been challenged.

16 Kansas, 573, 582; 109 Ill. 537; 157 Ill. 339; 49 Ark. 455; 16 Kansas, 583; 103 Missouri, 52; 82 Iowa, 312, 340; 12 Montana, 316; 87 Texas, 19; 63 Minn. 384.

But as supporting the contention that the provision of the statute under discussion is obnoxious to the equality clause of the 14th Amendment of the Federal Constitution, the court is cited to Ry. Co. vs. Ellis, 165 U. S. 150.

In that case the Federal Supreme Court had occasion to construe the effect of Sec. 1 of the 14th Amendment upon a statute of the State of Texas imposing attorneys' fees not exceeding $10 upon railroad corporations in suits where the amount involved did not exceed fifty dollars, and where there had been refusal or failure on part of the railway company to pay the claim within a certain specified time after presentation and verification by oath, and the claimant had been driven to sue and had recovered the full amount claimed. It was held that the statute operated to deprive the railroad companies of property without due process of law, and denied to them the equal protection of the law, in that it singled them out of all citizens and corporations and

136 SUPREME COURT OF LOUISIANA,

Liquidating Commissioners, etc., vs. Tax Collector et als.

required them to pay in certain cases attorneys' fees to the parties suc· cessfully suing, while it gave to them no like or corresponding benefit.

It will be observed that only against railroad companies was the exaction made. A penalty was imposed upon them, and upon them alone, for a failure to pay certain debts. No individuals were to be thus punished, and no other corporations. The Act singled out a certain class of debtors and punished them, when for like delin· quincies it punished no others. They were not treated as other debtors, or equally with other debtors. They could not appeal to the courts as other litigants under like conditions and with like protection. They were discriminated against. The rule of equality was ignored.

And it was said that:—

"Unless the legislature may arbitrarily select one corporation or one class of corporations, one individual or one class of individuals, and visit a penalty upon them which is not imposed upon others guilty of like delinquency, this statute cannot stand."

The Texas statute would have stood the test of the equality clause of the 14th Amendment had it been made to apply to all alike—to other corporations and individuals, as well as to railway corporations. So, too, it would have stood the test, notwithstanding it related to suits in which only *railway* corporations were parties defendant, had it given to the latter a like or corresponding benefit to that bestowed upon the plaintiffs in such cases. That is to say, if the statute, while stipulating that if the litigation terminated *adversely* to the railway it was to be mulcted in the attorney's fees of the successful plaintiff, it had gone further and stipulated that if the litigation terminated *in its favor* it should be entitled to recover from the plaintiff the same amount in attorney's fees.

But where it was not made to apply to all corporations and indi- viduals alike, or where, while made to apply to only railway companies, it denied to the latter a benefit corresponding to that bestowed upon the other party litigant, it violated the principle of the equal protection of the laws.

Such is our reading and interpretation of the Ellis case in the 165th U. S.

It, thus, plainly appears that the point raised in that case was essen- tially different in character from that here at issue.

The Texas law was unconstitutional because it failed to put *all* debtors in that class of cases upon the same footing as to the penalties prescribed. The Louisiana statute makes no distinction or difference

between delinquent tax payers who are litigants. All are treated alike by the law in its operation, whether they be citizens of this State or not; whether the delinquent be a railroad corporation or any other kind of a corporation, or an individual. No matter who it is, if he or it sued inadvisedly, without good grounds, in obstructing the due and orderly collection of the public revenues, and is cast, he is mulcted in the penalties prescribed. Hence, there is here no denial of the equal protection of the law.

## III.

When plaintiffs filed their suit they made a tender to the tax collector of $2262.20 as the amount they were due for taxes on the property for both years, 1898 and 1899. This was $1131.10 for each year. It was arrived at by calculating the tax rate, 25 mills, on an assessment of $45,000 for each year, plus $6.10 each year as acreage tax.

The tender was made October 31st, 1900. The sheriff having declined it, plaintiffs deposited it in court.

They now ask that should the judgment herein be against them, they be not mulcted for the penalty of two per cent. per month and the 10 per cent. commissions as attorney's fees on the amount so deposited. They urge that that amount be looked upon as a partial payment on their taxes, and that the penalties and commissions of counsel be limited to the balance due.

When the tender was made the differences between plaintiffs and the tax collector were these:—

Plaintiffs claimed the assessment on their property for each of the years 1898 and 1899 should be $45,000. The tax collector pointed to the rolls showing their assessment for each of those years to be $60,000. Plaintiffs claimed the right to pay on the basis of $45,000 assessment, plus the acreage tax. The tax collector insisted his duty was to demand payment of the taxes upon the basis of the assessment as shown by the rolls. Plaintiffs tendered $2262.20 as the full amount due by them for the two years. The tax collector pointed out that this was not the amount they owed even upon the basis of a $45,000 assessment—that it included no interest.

The statutory interest due as penalty upon delinquent taxes is two *per cent.* per month. Section 40 of Act 170 of 1898.

The taxes of each year became delinquent on and after the 31st of December of the year. *Ib.*

Hence, plaintiffs were delinquent on their taxes for 1898 from and after January 1st, 1899, and on their taxes for 1899 on and after January 1st, 1900.

When, therefore, they made the tender to the sheriff, they owed as interest two *per cent.* per month for 22 months on their 1898 taxes, and the same for 10 months on their 1899 taxes.

Yet they failed entirely to include this interest in the amount tendered. They acknowledged to owe taxes on an amount of $45,000 for each of the years; that amount of assessment was not in contest; but refused to consider that to the principal of the taxes thus due must be added the accrued interest.

Honestly considering that they owed taxes on the basis of a $45,000 assessment, they should have tendered the full amount of taxes due, principal and interest, on such assessment. Had they done so, it would, we think, have been the sheriff's duty to accept it *as partial payment* under the authority of the third paragraph of Section 56 of the Act of 1898, and we would now sustain its deposit in court as a partial payment, relieving them of the penalties thereon.

But the amount they tendered the sheriff, and subsequently deposited in the trial court, was over seven hundred dollars *less* than what was due at the time on the assessment they, themselves, fixed. It was, therefore, a purely arbitrary amount, and was alike abortive as a tender or deposit.

While the law recognizes and permits partial payments on taxes, it must be upon a reasonable showing made and some reasonable basis of calculation adopted. The tax-debtor may not arbitrarily select a given sum out of the total amount of taxes the rolls show he owes, and expect the tax collector to receive it as a partial payment. No; the collector would do right to refuse such payment and proceed to enforce collection for the whole amount, with penalties added.

Plaintiffs, to have relieved themselves of the interest penalty on the 1898 tax, on their basis of $45,000 assessment, should have made their tender of $1131.10 on December 31st of that year, and to have obtained like relief on the 1899 tax, the tender should have been made on the same date in the latter year.

Nevertheless, a majority of the court think, under all the circumstances of the case, plaintiffs should be relieved of the two *per cent.* per month interest on the amount they deposited in court, from and after the date of its deposit—this upon the theory that, following the

deposit, the tax collector could, at once, have obtained from the court an order for the delivery to him of the amount deposited as so much admitted to be due. But, as far as the commissions due the tax collector's attorney are concerned, they must be paid on the full amount to be collected, including the amount deposited, for the reason that the same is compensation earned by him for successfully defending an injunction suit brought by plaintiffs to prevent the sale of their property in enforcement of the taxes due thereon.

It is, therefore, ordered and decreed that the judgment appealed from be amended by relieving plaintiffs from the payment of interest at the rate of two *per cent.* per month on two thousand, two hundred and sixty-two and 20-100 dollars, deposited in the trial court, from and after the date of said deposit, to-wit:—October 31st, 1900, and that, as thus amended, the said judgment be and is hereby affirmed, costs of the lower court to be borne by plaintiffs, those of appeal by defendant.