*104 Statement of the Case.
MONROE, O. J.
Plaintiffs, who are three citizens and taxpayers of the parish of Ouachita, having obtained judgment annulling and enjoining the further execution of a certain contract entered into between the defendant police jury of that parish and John T. Bryant, the latter prosecutes this appeal. The contract reads as follows: •
“Contract.
“State of Louisiana, Parish of Ouachita.
“Be it known and remembered that this contract, made and entered into on this 13th day of November, 1914, by and between the police jury, * * * herein represented by O. P. Stack, president, and Victor C. Barringer and G. W. Phillips, duly authorized herein and hereto by a resolution of said police jury, * * * dated and adopted on the 11th day of November, 1914, which said resolution is hereto attached and made part hereof, and J. T. Bryant, a resident of said parish and state, party of the second part, witnesseth:
“That whereas, the policy jury * * * is informed and believes that there is a large amount of real property in the parish * * v which is not properly classified and is not properly assessed for taxation, and does not bear its just proportion of taxes; and whereas, it is to the interest of the police jury * * * that all real property in said parish * * * subject to parish taxation should be properly described and assessed according to law, and that all real property in said parish * * * should bear its just proportion of taxation:
“Now, therefore, it is fully agreed and understood by and between the said parties hereto as follows, to wit:
“(1) That the police jury of the parish of Ouachita, party of the first part, does hereby employ the said J. T. Bryant, party of the second part, to examine all the real property assessed for taxation in the parish of Ouachita subject to taxation by the said parish, * * * and ascertain its condition and value, so that said property shall be properly classified and properly assessed according to law for taxation.
“(2) That as compensation for his service in examining said property and ascertaining its condition and value for proper classification and assessment according to law the said J. T. Bryant shall receive and shall be paid by the police jury ® * * an amount equal to one-half (%) of the taxes collected by the police jury * * * for the year 1915 in excess of and over and above the amount collected by the police jury * * * on the real property assessed for taxation in the parish * * * and subject to parish taxation for the year 1914.
“(3) That all compensation due the said J. T. Bryant under the conditions of the contract, as above set forth, shall be due and payable on the 1st day of January, 1916, or as collected.”
It is alleged that the contract is ultra vires of the police'jury, that the stipulated compensation is merely an addition to the commissions and fees of the parish assessor, who is entitled to the only compensation authorized by law for the work thereby contemplated, and that they (plaintiffs), being citizens and taxpayers, are entitled to bring this suit. Defendants, after an exception of prematurity, which was overruled, filed an answer, alleging the validity of the contract, and further as follows:
“That, while said petitioners are citizens and taxpayers, * * * they are employed by and represent the owners of large bodies of land and timber lands and timber holdings in said parish and state, and your respondents are informed and believe that the returns made by various holders of said lands and timber and timber holdings to the assessor of the parish * * ® are not in accordance with the facts and at a much less value than their real value, and that there are large bodies of land which are well timbered that are returned as denuded lands, and that there are large quantities of timber lands returned as containing so many thousand feet of timber, when, in truth and in fact, they contain larger quantities of timber, and should be assessed at a different classification from that which is returned, and that neither the assessor of the parish nor any member of the police jury is a timber estimator competent to estimate the timber, and that it is absolutely essential for the proper assessment and collection of the taxes in the parish * * * that all the real property therein should be properly assessed for taxation according to its value, and that all timber should be assessed according to its stumpage and its value, and that the value can only be ascertained by ascertaining the stumpage, and that said John T. Bryant is an expert estimator, and can, and will, furnish the police jury with the information necessary to properly assess said land and timber. ® * *
“Respondents further show that they are informed and believe that there is a much larger acreage of open land in the parish of Ouachita than is shown on the assessment rolls assessed as woodland, or as denuded land, which should be assessed as cultivated and farm lands, and that neither the assessor of the parish * * * and no [nor any] member of the police jury * * * is competent to run the lines and estimate the acreage of cultivated lands belonging to the different owners with any degree of accuracy, and that the said John T. Bryant is capable of running those lines and estimating the acreage *106 of open and cultivated land, and that he will furnish the assessor of the parish * * * and the police jury * * * with the information necessary for the proper assessment of the open and cultivated lands in the parish of Ouachita.
When the ease was called, for trial, counsel for plaintiffs offered in evidence copies of the resolution and contract which they attack, to which offer counsel for defendants objected, on the ground that the petition discloses no cause of action, which objection was made general and was overruled.
Defendants’ counsel then offered testimony to show that the nominal plaintiffs really represent the owners of large timber holdings in the parish; offered the assessments of certain sawmills, lumber and timber concerns, and estimates of their timber holdings ; offered to prove that no member of the police jury was competent to make such estimates, and that the defendant Bryant had employed assistants and had performed a large portion of the contract, that the assessor was incompetent to make such estimates, and had not had the timber in the parish estimated nor the cultivated lands surveyed, and that defendant Bryant was competent to do that work. To which offers it was objected that the evidence was irrelevant, and that the sole questions before the court were whether the police jury had authority to enter into the contract, and whether a citizen and taxpayer has a standing in court, regardless of the amount of taxes paid by him, to prevent an illegal disposition of public funds.
Opinion.
[1] The trial judge, after citing certain provisions of the law and certain decisions of this court bearing upon the general powers of police juries, and quoting the two first paragraphs of section 2 of Act 63 of 1906, p. 97, which section amends and re-enacts section 24 of Act 170 of 1898, p. 359, expresses the views upon which he has based the judgment appealed from as follows (quoting his opinion in part):
“This is the only law of the state which authorizes the police juries to deal with matters of assessment, and their powers on the subject are necessarily derived therefrom. This law seems to contemplate that each taxpayer shall furnish the assessor a list of his property, with valuations thereon, with authority, in the latter to add to and increase valuations according to his best judgment, and, on failure of the property owner' to furnish such list and values, the assessor shall make up the same himself from information obtained by him through the sources and means provided in the statute. In the event of disagreement between the taxpayer and assessor, the latter shall make up a duplicate list, with values as contended by the former, which shall be sworn to by the taxpayer, and submit it, with his own, to the board of review. Section 20, Act 170 of 1898.
“While the duties imposed upon the police juries as boards of review by the various statutes defining said duties appear to be somewhat general as to the examination and valuation of property placed upon the tax rolls by assessors, the Supreme Court of Louisiana has held that their power to change valuations placed thereon by the assessors is limited to instances in which there is a controversy or contest. Union Oil Co. v. Campbell, 48 La. Ann. 1350, 20 South. 1007; Police Jury of Concordia Parish v. Campbell, Assessor, 117 La. 75, 41 South. 358. * * *
“If the powers of the board be limited to the determination of issues thus raised, as would appear from the authorities cited, could it anticipate such a condition in advance of an issue so raised, and provide itself with evidence thereon by the employment of experts at the expense of the parish? * * *
“The statute points out the manner in which the board shall determine the values of property on the assessment lists, and to that end are ‘directed to carefully examine and scrutinize the assessment list as prepared and filed by the assessor and to compare each individual assessment with the others, considering the values placed on same, and, after hearing evidence concerning same, determine if said valuations are equitable and just and in accord with the requirements of the Constitution.’ * * *
“The effect of the contract is nothing more or less than the employment of an assistant to the assessor, and, as will be seen from the authorities cited, when the law provides an officer upon whom such duties are imposed, the county or parish is without authority to vest those duties in other persons at the expense of the public.”
For a better understanding of the question here at issue we reproduce in full section 24 of Act 170 of 1S98, as amended and re-enacted by Act 63 of 1906, p. 97, § 2, as follows, to wit:
*108 (1) “Sec. 24. Be it further enacted,” etc.: “That the said board of reviewers shall meet on the first Monday in July of each and every year, or as soon thereafter as possible, and the several assessors throughout the state, parish of Orleans excepted, shall lay before the said board all of said lists of property with the estimate [d] [actual] cash value thereof extended and listed and valued by the said assessor as aforesaid, together with the list and valuation, made under oath as aforesaid, of those property owners who believe the assessor’s valuation to be in excess of, and, beyond the actual cash value of the personal or real property therein enumerated, and the said board shall proceed at once to determine the issue involved, and their decision shall be final.”
(2) “It shall be the duty of the board of re>view, as constituted by this act, and they are hereby directed, to carefully examine and scrutinize the assessment Kst as prepared and filed by the assessor and to compare each individual item assessment with the others, considering the values placed on the same, and after hearing evidence concerning same determine if said valuations are equitable and just and in accord unth the requirements of the Constitution, and either approve or disapprove the said assessment list. If the said list be approved by the reviewers, then said assessment list or roll shall be final. Should the reviewers disapprove the roil or any item * * * thereon, it shall be the duty of the reviewers to note said items and to declare and make known the value which, in their opinion, should be correctly listed upon the roll, in lieu of the amount there named by the assessor for assessment for purposes of taxation, and notify the assessors of such disagreement, with reason for the same, and, if after considering the said difference, with reasons thereof, the assessor should concur in such valuation, then the assessor shall make the assessment placed upon the individual item on the roll conform to the valuation agreed upon by the board of reviewers and concurred in by him. If there be no concurrence as to the valuation for purposes of taxation between the assessor and the reviewers, then and in that case the valuation (as fixed by the board of reviewers) shall remain as final, unless otherwise ordered and adjudged by the courts, as provided by this act.” (Italics by the court.)
(3) “It shall be the duty of the board of review, as constituted by this act, to hear any and all taxpayers who desire to contest the correctness of the valuation placed by the assessor upon the property listed for assessment, owned, controlled, or held by him, and to determine as to the correctness or incorrectness of such contest. And if said claim for relief be approved by the reviewers, then they shall proceed to notify the assessor of such erroneous assessment, and propose correction of the same in the manner prescribed in the foregoing portion of this .section.”
(4) “Provided, however, if said claim for relief be not approved by the reviewers, the claimant may bring action for relief before the district court, which court will hear and determine said suit in accord with the law governing the case.”
(5) “That, in all suits for reduction of assessments, the judge is hereby directed to hear and try such eases without delay, and in chambers, if necessary, without cost to the reviewers or the assessor. It is hereby made the duty of the assessor and he shall bring suit, when necessary, to protect the interest of the state, and he shall also have the right of appeal, and such proceedings shall be without cost to him or the state. Any taxpayer shall have the right to appear before the board of reviewers and call in question any assessment on the roll if he considers such assessment too low, and any taxpayer shall have the right to appeal from the decision of the assessor or board of reviewers, to the courts at his own cost.”
(6) “No valuation made by the assessors shall be increased by the board of reviewers unless the taxpayer is served with notice to appear before said board, within five days, and show cause why such increased assessment should not be made.”
(7) “Such summons shall be signed by the president of the board, service therein and return made in the manner now provided by law in the case of ordinary subpasnas.”
In the same connection, we think it pertinent to call attention to sections 14 and. 26 of Act 170 of 1898, which read:
“Sec. 14. * * * That it shall be the duty of each taxpayer, parish of Orleans excepted, to fill out a list of his property in accordance with the form provided in section 17 of this act; and he shall make oath thereto before the tax assessor, or any officer authorized by law to administer oaths, and return the same to the assessor before the first of May of each and every year, and any refusal, neglect, or failure from any cause whatsoever, to comply with this provision of this act shall act as estopping the taxpayer from contesting the correctness of the assessment list filed by the assessor. * * *
“See. 26. * * * That all taxpayers in the parish of Orleans shall have the right to appear before a standing committee, * * * and, in the parishes, before the board of reviewers, as provided for in this act, during the sessions of said board, and be heard concerning the descriptions of the property listed and the valuation of the same as assessed; and the board of reviewers, having the claim for relief of the taxpayer, shall either approve or disapprove the petition, as provided in section 24, and, if disapproved, then, the taxpayers shall have the right of testing the correctness of their assessments, before courts of justice in any procedure which the Constitution and laws may permit; but the action to test such correctness shall be instituted on or before the first day of November of the year in which the assessment is made. * * * ”
*110 For convenience of reference, we have numbered the paragraphs in section 24, as above quoted, though they bear no numbers, as published, and it will be observed that paragraphs 1, 3, and 4 provide for cases in which the assessor has placed one valuation upon property and the owner has placed another, and that they require the assessor, upon the complain! of the taxpayer, to lay both before the board, and the board to proceed at once to determine the issue involved; that paragraph 5 makes it the duty of the assessor to bring suit “when necessary to protect the interest of the state,” and gives him the right of appeal in such cases without cost to him or the state, and (last clause) confers upon “any taxpayer” the right to call in question any assessment on 'the roll if he considers such assessment too low; and that paragraphs 2, 6, and 7, in mandatory language, make it the duty of the board “to carefully examine and scrutinize the assessment list, * * * compare each individual item assessment with the others, * * * and, after hearing evidence concerning same,” determine whether the “valuations are equitable and just and in accord with the requirements of the Constitution,” and provided (paragraph 6) that “no valuation made by the assessor shall be increased unless the taxpayer is served with notice to appear before said board, within five days and show cause why such increased assessment should not be made,” the summonses in such cases (paragraph 7) to be signed by the president of the board, and returns made “in the manner now provided by law in the case of ordinary subpoenas.” It will further be observed that, under sections 14 and 26, the taxpayer is estopped to contest his assessment before the board of reviewers unless he'Shall have made the return of his property as required by section 17, and has no standing to contest it in court, unless he shall first,have presented his petition to the board of reviewers and it shall have been disapproved by the board, and even in that case cannot be heard in court unless he institutes his suit before the 1st of November of the year in which the assessment complained of was made.
Ail of which propositions have been affirmed by the decisions of this court. Liquidating Commissioners v. Marrero, 106 La. 130, 30 South. 305; Construction Co. v. Tax Collector, 108 La. 435, 32 South. 399, 58 L. R. A. 349; Lisso & Bro. v. Police Jury, 127 La. 292, 53 South. 566, 31 L. R. A. (N. S.) 1141.
Upon the other hand, if the power of the board of reviewers to make any change in the valuation of property assessed for taxation is “limited” (as our Brother of the district court seems to think that the court has decided) “to instances in which there is a controversy or contest” initiated by the taxpayer, it is quite evident that no increase of assessment is likely to be brought about, and that the public fisc will be the sufferer.
It is, however, as clear, we think, as language can make it, that the law which we have quoted was enacted in the interest of the state as well as of the taxpayer, and that, while the board has no authority to reduce an assessment in a case where the taxpayer has not complained and has estopped himself to1 complain of it, the mandatory duty is imposed upon the board to take the initiative, in the interest of the state, and, “in the language of the law,” to carefully examine and scrutinize the assessment list, as prepared and filed by the assessor, and compare each individual item assessment with the others, considering the value placed on the same, and after [notice to the taxpayer and] hearing evidence concerning the same, determine if said valuations are equitable and just [to the state] and in accord with the requirements of the Constitution.” The cases of the Union Oil Co. v. Campbell, *112 48 La. Ann. 1350, 20 South. 1007, and Police Jury v. Campbell, 117 La. 75, 41 South. 358, relied on as supporting the judgment appealed from were both decided before Act 63 of 1906 became a law, and the case first mentioned before the passage of Act 170 of 189S, and in each case it appeared that the board of reviewers was asserting a right to reduce an assessment or assessments of which the taxpayer had made no complaint, and, for aught that appeared, was estopped to complain.
We are therefore of opinion that it is the plain, mandatory duty of a board of reviewers to scrutinize every assessment roll, with a view of determining whether the valuations extended therein are correct or incorrect, and, if they are too high, and the taxpayers have made complaints as the law provides, to reduce them, in justice to the taxpayers, and, if they are too low to increase them, in justice to the state.
[2, 3] But, even if that were not the law, and the board of reviewers had no authority and was under no obligation to change any valuation upon an assessment roll, save at the instance of the owner of the property, it seems entirely clear to us that the law intends that it should act independently of the assessor, whose valuations it would be called on (in such case) to reduce, and hence we conclude that it was an error in the trial court to hold “that the effect of the contract is nothing more or less than an employment of an assistant to the assessor.” The purpose and effect of the contract was to provide the board of reviewers with information which they did not possess and which was absolutely essential to enable them intelligently to discharge their function of reviewing the valuations of the assessors.
In State v. Addison, 134 La. 642, 64 South. 497, defendant was charged with receiving a bribe, as a police juror, for keeping the police jury from letting any contract for the estimating of the timber in Vernon parish, and it was argued in his behalf that there was no law authorizing such contract, and therefore, whatever may have been his acts, they were not within the purview of his duty as a police juror. ' Dealing first with the question of the legality of the contract, it was said by this court:
“The police juries are authorized by law ‘to lay such taxes as they may judge necessary to defray the expenses of their respective parishes’ (R. S. § 2743), and they are also constituted boards of reviewers, with power to review the action of the assessors upon the complaint of the taxpayers in particular cases (Act No. 17Q of 1898, §§ 23 and 24). To discharge intelligently either of the functions mentioned, they must be informed from some source of the values of the property which is subject to the jurisdiction thus conferred upon them, and we find no law-which denies them the right to obtain such information elsewhere than from the assessors or the taxpayers.”
The opinion then further holds, in effect, that the question of the legality of the contract which defendant was charged with receiving a bribe to prevent the letting of had no bearing upon the question of his guilt or innocence of the offense charged. The statement in the quotation as to the powers of the board of reviewers was not intended to be limitative (as no question of that kind was presented), but merely as illustrating the argument that the members of the board could not be expected to confine themselves to interested sources in seeking the information necessary to the discharge of their functions.
And so we say here. If the board of reviewers of Ouachita parish is to take its information from the assessors, whose valuations it is required to review, it will be no better qualified to correct their valuations than they are to make them; and, if it is to take the valuations of the taxpayers, the state would save some expense by dispensing with the assessors and the boards alike,' and accepting the returns of the taxpayers in the first instance.
*114 [4] The argument that, because an assessor — an officer whose duties and compensation are fixed by law — may not without special authority increase the expense of his office, a police jury, charged with the administration of the affairs of a parish, is without authority to incur the expense necessary to the performance of a mandatory duty in connection with such administration, is without merit. Upon the whole we are of opinion that plaintiffs allege no sufficient reasons for annulling the contract here' in question, and that the court a qua erred in giving judgment to that effect. It is therefore ordered that the judgment appealed from be avoided and set aside, and that plaintiffs’ demand be rejected, and this suit dismissed at their cost in both courts.