Statement of the Case.
MONROE, C. J.
Plaintiff brought this suit in March, 1918, praying that the board of state affairs, the police jury of the parish of St. Landry, the assessor, and the tax collector be cited and that he have judgment decreeing void, in whole or in part, the assessment foj the taxes of 1917 which had been placed upon some 18,000 acres of land situated in that parish and of which he is the owner; his complaint being that the actual cash value of the land as fixed by the board of state affairs is excessive, and that the assessment should be annulled in toto, or, should that view not prevail, then that the actual cash value as fixed by the assessor and the police jury sitting as a board of reviewers exceeds the value as fixed by the state board and thereby contravenes article 225 of the Constitution and Act 140 of 1916, p. 330, and should be annulled to the extent of the excess.
As shown by the evidence, plaintiff made no complaint of the assessment in question prior to the bringing of this suit, either to the assessor or the board of reviewers, though the roll was held open for correction, as required by law. The board of reviewers held its sessions during the month of June, and in July the roll was forwarded to the state board, which for state purposes placed a lower valuation on plaintiff’s property than had been adopted by the assessor and board of reviewers for local purposes, and in August returned the roll, notifying the assessor of the change so made and directing him to hold the roll open to await its report of changes to be made by it for state purposes in the assessments of horses, mules, cows, sheep, goats, and vehicles; the board of reviewers considered the valuation which the state board had had thus placed on plaintiff’s property, but declined to mate any change in its own valuation; the report by the state board of the changes made by it in the assessments of animals and vehicles was made to the assessor in September, but there was a further delay in the matter of the closing of the roll by reason of the failure of the state board to complete its assessment of public utility corporations, which was not done until some time in November, and, in consequence of the changes and delay thus mentioned, the assessor was thrown behind in the matter of the completion of the roll and its delivery and filing, in triplicate, to the tax collector and in the offices of the auditor and recorder of mortgages, and he did not accomplish such delivery and filing until January 30,1918. That delay had, however, no connection with assessments other than those above mentioned by which it was occasioned, as to which the last work was done by the board of reviewers in June, and by the state board prior to its return of the roll in August.
The allegations contained in articles 5,' 6, and 14 of plaintiff’s petition are admitted to be correct, and are to the effect that the actual cash value placed on the property here' in question by the local authorities is $428,210, and by the state board $277,480; that 40 per cent, of $428,210, amounting to $170,280, was adopted as the assessment for purposes of local taxation, and 50 per cent, of $277,480, *455 amounting to $138,740, as ttie assessment for purposes of state taxation; and that the total amount of taxes claimed from plaintiff is $8,519.57. Some testimony was -taken, and some excluded, on the trial, upon the question of the actual cash value of plaintiff’s land; hut in the view that we take of the case.we find it unnecessary that it should he considered.
Opinion.
[1, 2] The law regulating the assessment and collection of taxes, requiring returns to be made by the taxpayers, affording them opportunities to have their assessments corrected by the assessing officer, and providing for and limiting the time within which appeals may be made to the courts in that behalf, is to be found in articles 225 and 226 of the Constitution (amended and readopted as proposed by Act 168 of 1916), and Acts 170 of 1898, p. 358, 130 of 1902, p. 219, 63 of 1906, p. 96, 182 of 1906, p. 331, 194 of 1906, p. 348, 220 of 1910, p. 363, 140 of 1916, p. 330. Section 26 of Act 170 of 1898, p. 361 (amended and re-enacted by Acts 130 of 1902, § 3, p. 223, and 63 of 1906, § 2, p. 99), requires the taxpayer to bring his suit for the correction of his assessment on or before the 1st day of November of the year in which the assessment has been made, and we find no subsequent change in that respect.
According to the jurisprudence of this court (and, as to the returns, by express provision of law), it is a condition precedent to the exercise of such right that he shall have made his return as required by law and shall have availed himself of the opportunities afforded him to apply for the correction of his assessment to the officers authorized to make it, and while the roll is open for that purpose; and if he fails to comply with that condition, or having complied, fails to bring his suit within the prescribed limit of time, he loses the right to bring it and cannot thereafter be heard. In Shattuck & Hoffman v. New Orleans et al., 39 La. Ann. 206, 1 South. 411, it was held that (quoting the syllabus):
“The taxpayer, before bringing suit for the reduction or correction of an assessment, must, as a condition precedent, make the preliminary opposition thereto and application for redress provided for by law.”
And that ruling has been affirmed in the following (among other) cases: State ex rel. Johnson v. Tax Collector, 39 La. Ann. 538, 2 South. 233; State v. V. & A. Meyer, 41 La. Ann. 437, 6 South. 590; Brewing Co. v. Board, 41 La. Ann. 565, 6 South. 823; Oteri v. Parker, 42 La. Ann. 377, 378, 7 South. 570; Insurance Co. v. Levi, 42 La. Ann. 435, 7 South. 625; Leeds & Co. v. Hardy, 43 La. Ann. 810, 9 South. 488; Behan et al. v. Board, 46 La. Ann. 875, 15 South. 397; Oil Co. v. Assessor, 48 La. Ann. 1358, 20 South. 1007; Liquidating Com’rs v. Tax Collector, 106 La. 133, 30 South. 305; Marston v. Elliott, 138 La. 581, 70 South. 519, Ann. Cas. 1917D, 94.
Where there is an alleged assessment of property that is exempt by law from taxation, or is not within the territorial jurisdiction of the assessor, or where the assessment has not been made by the assessor, or has not been completed, and in other like cases, the limitation of time within which an action may be brought for its correction is inapplicable, and an action in nullity may be brought, without regard to such limitation; since such alleged assessment is not an assessment within the contemplation of the law, is not, and can never become, the basis for the levy of a-valid tax, and may be annulled and canceled from the records, as may any'other unwarranted incumbrance upon a title. But, where officers charged with that duty have made and completed an assessment for the taxation of property which is subject to taxation and within their jurisdiction, there results an assessment which is presumed to be valid, unless and until, in a proceeding authorized by law and brought within the time and un *457 der the conditions prescribed by law, it be shown to fall below or to exceed some definite and determined limitation of valuation which the law has established; in which event, though it is not open to attack, in an action of nullity, as having no legal existence, it Is open to correction, by an increase or reduction in the valuation, through the action above mentioned.
“A distinction,” this court has said, “is to be drawn between suits to correct an assessment and suits which go to the inherent validity of an assessment and to the legality of the tax based thereon. In the first class are to be put those suits in which an assessment is complained of and attacked for overvaluation and misdescription of the property listed, involving merely the regularity or correctness of the assessment. In the second class are to be enumerated those actions attacking an assessment as void on account of radical defects, and drawing into question, not the correctness merely of an assessment, but the existence of any valid assessment.” Ry. & S. S. Co. v. Sheriff, 50 La. Ann. 742, 23 South. 948, 950.
And in another and more recent case it was said;
“The assessments are grossly excessive. * * * But the suit for the reduction of the assessments * * * is barred by the said statute [referring to Act 170 of 1898, § 26, p. 360]. As to them, the court is powerless to grant relief. A plain and positive provision of law Cannot be disregarded even for the purpose of correcting gross injustice. * * * The contention of plaintiff’s learned counsel [is] that assessments so grossly excessive as those here in question — six times as large as they ought to be — are absolutely null, in that they are not the result of an exercise of judgment on the part of the assessor, as the law requires that an assessment should be, but merely of guesswork or caprice. We cannot adopt that view. Such as the assessments are, they are assessments. They were intended to be such, and are such in fact. They are not annullable in toto.” Orient Ins. Co. v. Board, 124 La. 875, 50 South. 778, 780; Lisso Bros. v. Police Jury, 127 La. 290, 53 South. 566, 31 L. R. A. (N. S.) 1141; Paepcke Leicht L. Co. v. Clack, 137 La. 397, 68 South. 739; Haynes v. Police Jury, 139 La. 110, 71 South. 244.
The cases of Texas & P. R. Co. v. Flournoy, 128 La. 71, 54 South. 475, Paepcke Leicht L. Co. v. Clack, 137 La. 397, 68 South. 739, and Crowell-Spencer L. Co. v. Lafleur, 137 La. 772, 69 South. 170, do not appear to us to sustain plaintiff’s view of the question here presented; it appearing in the case first mentioned that part of the property involved was not within the territorial jurisdiction of the authority making the assessment, and that the particular tax in question was not extended on the roll until some time in December; in the second case that it was alleged that the tax involved had been paid and that there was a double assessment; and in the third case that the assessment was not the work of the assessor.
[3, 4] It is contended on behalf of plaintiff that Act 140 of 1916 contemplates two “actual cash values” of the same property; that the actual cash value of plaintiff’s property is fixed (on the roll for 1917) at $277,280 for state purposes and at $428,210 for local purposes; that it is impossible for it to have two such values at one and the same time; that the valuation by the state board exceeds the actual cash value, and thereby contravenes the Constitution and is void; that “under no circumstances can the actual cash valuation of property by the local authorities for assessment purposes exceed that fixed by the board of state affairs for the state purposes,” and as it does so exceed in this instance said valuation is void, or, in the alternative, is void to the extent of the excess.
The contention confuses the term “actual cash value,” as used in the statute, with the term “valuation,” also used. Value, as applied to property, is an attribute which the property possesses by reason of the use which is or may be made of it; of the product that it produces, or may produce; or of some sentimental association connected with it. “Actual cash value” (as that term is used in the statute) is the price which the law *459 (Act 130 of 1902, § 5, subd. 6, p. 226), arbitrarily and for tbe purposes of taxation, assumes that property will bring if sold for cash under certain conditions. “Valuation,” upon tbe other band, is merely tbe estimate in dollars and cents which, for tbe same purposes, tbe assessors (state board and local authorities) are required to make of tbe “actual cash value” or “just and true value” of all taxable property within their respective jurisdictions. It is clear, then, that neither the value of property (whether “actual cash” or “just and true”) nor yet its “valuation” is a determined factor, like the length of a yardstick or the weight of a minted coin, and that though property can have but one value at one and the same time, determinable as it is by varied conditions of time and place and the state of the money market, and which neither the assessors nor the lawmakers can fix or change by mere declarations, ■ there may be, and frequently are, as many estimates, or valuations, of that value as there are individuals who are called on to express their opinions upon the subject.
Hence, as a law is not to be so construed as to lead to an absurdity, or impossibility, we conclude that Act 140 of-1916 does not contemplate the fixing of two actual cash values upon the same property at the same time, but does contemplate that the state board shall make its “valuation” of the actual cash value of all taxable property in the state for the purposes of state taxation, which may be different from the valuations to be made by the local authorities for the purposes of local taxation; and that, as the power of the state board with respect to assessments is limited to those intended as the bases for state taxation, the power thus left to the local authorities with respect to assessments intended as the bases for local taxation is not intended by the act to be otherwise limited than as expressly declared or as resulting from inevitable implication.
Article 225 of the Constitution (amended as proposed by Act 168 of 1916) declares that—
“Property shall be taxed as may be directed by law; provided, that the valuation of property for the assessment of state taxes * * * may be different from the valuation fixed for all other purposesand that “the assessment of all property shall never exceed the actual cash value thereof.”
Article 226 (as so amended) reads:
“There shall be, and hereby is, created a board of. state affairs, whose duty it shall be to assess, for state purposes, all taxable property. It shall have such other authority relative to state assessment, budget, income and expenditure as may be conferred upon it by the General Assembly.”
Act 140 of 1916, being “An act to carry out articles 225 and 226 of the Constitution; to create a board of state affairs,” etc., after providing for the organization of the board, etc., declares:
“Sec. 10 [p. 334], * * * That it shall be the duty of the board, and it shall have the power and authority:
“1. To assess, for state purposes, all taxable property, * * * as authorized and required by articles 225 and 226 of the Constitution.
“2. To fix and equalize the value of said property for the purpose of collecting the state taxes, not to exceed its actual cash value; leaving to the lawful authorities of each parish or other subdivision * * * full liberty to assess tax» es on, and fix. valuation at, less than actual cash valuation as they deem fit; provided that the percentage of the actual cash valuation of property assessed in any parish, for other than state purposes, shall not fall below twenty-five per cent, of the actual cash valuation, as fixed by the board for state purposes; provided, further, that for local purposes the percentage shall operate equally and uniformly on all taxable property within the parish on the actual valuation adopted for assessment purposes; provided, further, that the actual cash valuation and assessment of railway, telegraph, telephone, sleeping car and express business throughout the state, * * * or other property heretofore assessed by the state board of appraisers, shall be fixed and assessed by the board, for all purposes.”
Tbe closing paragraph of section 13 of the act reads:
*461 “The state hoard in fixing the valuation for state purposes shall not be bound by the valuation fixed by the assessor for local purposes, but shall, in all cases, truly endeavor to arrive at a just and true valuation of the' property, for state purposes.”
Section 15 gives the police jury, sitting as a board of reviewers, authority to review the assessments made by the state board for state purposes as well as the assessments made by the assessor for local purposes, but section 16 declares:
“That the action of the state board, after considering the recommendation of the parish board of reviewers, shall be final,” always “provided that the taxpayer may resort to the court,” etc.
We find nothing in the provisions thus quoted, or elsewhere in the statute, which must necessarily be construed as indicating an intention to allow the local authorities less liberty of conscience and judgment in making particular assessments for the purposes of local taxation than is allowed the state board in making such assessments for purposes of state taxation. Quite to the contrary; the statute, after making it the duty of the state board to fix and equalize the value of all taxable property in the state, “not to exceed its actual cash value,” for the purposes of state taxation, ex vi termini, leaves to the local authorities “full liberty to assess taxes on, and fix valuations at, less than actual cash valuation, as they deem fit; provided that the percentage of ¡the actual cash valuation of property assessed in any parish, for other than state purposes, shall not fall below 25 per cent, of the actual cash valuation, as fixed by the board for state purposes.”
The only restriction, therefore, that is im-. posed upon the local authorities with respect to the actual cash valuations that they may make is that which is thought to arise by implication from the fact that they are left “full liberty to assess taxes on, and fix valuations at, less than actual cash valuation”; the suggested implication being that it was not intended that they should assess taxes on and fix valuations at greater than actual cash valuations, following which is the proviso that the percentage of their actual cash valuation that they may adopt for the purposes of local assessment and taxation shall not fall below 25 per cent, of the actual cash valuation as fixéd by the state board for state purposes. The questions whether the valuation made, either by the state board or the local authorities, exceed actual cash valuation, and whether the percentage of actual cash valuation adopted by the local authorities for the purposes of local taxation falls below 25 per cent, of the actual cash valuation made by the state board for state purposes, are both justiciable; but, for the reasons which, have been stated, the first mentioned of the two unquestionably belongs to that class with respect to which the remedy provided is an action to correct the assessment, which must be preceded by a return of the property and a protest to the assessors and brought on or' before the 1st day of November of the year in which the assessment has been made. As to the question last mentioned, there can be no complaint here, since the 40 per cent, of the actual cash valuation of plaintiff’s property, amounting to $170,280, upon which the assessment in question is based, exceeds, and does not fall below, 25 per cent, amounting to $69,320, of the actual cash valuation as fixed by the state board for state purposes.
[5] It is hardly necessary to say that Act 211 of 1918, § 3 (amending former section IS) of which (page 392) declares, “That the actual cash value of all property, fixed by the board of state affairs for state assessment purposes, shall be the actual cash value for all purposes,” having become a law after the happenings out of which this suit has arisen, has no application herein. The judgment in the district court having been given in favor of plaintiff, and the defendant having appealed:
It is ordered and decreed that the judgment *463 appealed, from be annulled; tliat plaintiff’s demands be rejected and this suit dismissed; that there now be judgment in favor of L. Austin Fontenot, herein appearing as attorney for the tax collector, and against said plaintiff, Leonce M. Soniat, in the sum of $851.-95, as the commission and penalty allowed and imposed by section 16 of Act 140 of 1916, with legal interest thereon from the date upon which this judgment shall become final until paid.
It is further decreed that plaintiff pay all costs.