(93 South. 678)

No. 25216.

### CROWELL & SPENCER LUMBER COMPANY, Limited, v. WORD, Assessor, et al.

(July 17, 1922. Rehearing Denied by the Whole Court Oct. 19, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Taxation ⬅➡348—Value of timber should be estimated as a whole, and cost of logging deducted.**

In valuing tract of timber for taxation, the value of the tract should be estimated as a unit, by estimating the value of the entire tract in lumber and then deducting the cost of logging the entire tract instead of subdividing it and adding the value of the subdivisions, this being the accepted commercial method of ascertaining the value of timber when bought and sold.

2. **Taxation ⬅➡499—Evidence held to show value at which timber and timber land returned was its fair and reasonable cash value.**

Evidence, in a suit to reduce an assessment of timber and timber land, *held* to show that the value at which it was returned to the assessor by the owner was its fair and reasonable cash valuation.

3. **Taxation ⬅➡499—Attorney's fees denied in suit to cancel or reduce assessment when plaintiff·successful.**

In a suit in the alternative for cancellation or reduction of an assessment, where plaintiff is entirely successful in obtaining a reduction of the value as returned by it, attorney's fees will be denied.

4. **Taxation ⬅➡499 — Evidence insufficient to show change in assessment after exposure of rolls for inspection.**

Evidence *held* insufficient to show any change in parish assessment rolls after their exposure for public inspection.

5. **Taxation ⬅➡499—Burden on one attacking assessment to show change therein after exposure of rolls for inspection.**

The onus probandi rests upon one attacking the parish assessment to show any illegal change in the assessment made after the exposure of the assessment rolls for public inspection.

6. **Taxation ⬅➡319(1)—Local authorities have same liberty of judgment in making assessments for local taxation as state board for state taxation.**

Act No. 140 of 1916, § 10, as amended and re-enacted by Act No. 211 of 1918, § 1, requiring the Board of State Affairs to equalize the value of property for the purpose of collecting state taxes, leaving to local authorities of each parish full liberty to fix valuations at less than actual cash value as they may deem fit, allows local authorities no less liberty of judgment in making assessments for local taxation than is allowed the state board in making assessments for state taxation.

7. **Taxation ⬅➡319(1)—Instructions to assess by state board held not to prevent exercise of judgment in fixing local assessment.**

Instructions to assessors issued by the Board of State Affairs stating tentative average minimum values on certain classes of property which would be accepted by it and stating that the board did not bind itself to maintain them, but reserved the right to raise or lower such values if they deemed necessary, did not deprive local authorities of the right to exercise the judgment given them by Act No. 211 of 1918, § 1, in fixing local assessments.

8. **Taxation ⬅➡499 — Evidence insufficient to show assessor did not exercise judgment in fixing local assessment.**

Evidence *held* insufficient to show that a parish assessor failed to exercise his own independent judgment in making a local assessment or acted as a mere instrument of the state board.

Appeal from Twelfth Judicial District Court, Parish of Vernon; John H. Boone, Judge.

Suit by the Crowell & Spencer Lumber Company, Limited, against Lovett Word, assessor, and others. From a judgment for plaintiff, defendants appeal. Affirmed.

A. V. Coco, Atty. Gen., and P. L. Ferguson, of Leesville (Harry P. Sneed, of New Orleans, of counsel), for appellant State Tax Collector.

Hakenyos, Hunter & Scott, of Alexandria, for appellee.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

LAND, J. The plaintiff, a Louisiana corporation, has instituted this suit to annul the parish assessment, and, in the alternative, to reduce the state assessment against it as excessive. The district court reduced the valuation to that returned by the plaintiff, and defendants have appealed.

Plaintiff corporation returned for assessment for the year 1921, to the assessor of Vernon parish, a list of its timber land and timber in said parish, consisting of 19,966.63 acres in fee and 10,283.52 acres of timber only, and fixed the value on same at $2,062,548. This valuation after having been accepted by the police jury of Vernon parish, sitting as a board of review, was increased by the Louisiana Tax Commission, formerly the State Board of Affairs, to the sum of $2,499,215, or an increase in value of $436,667, and an increase in taxes based upon this increased valuation in the sum of $53,597.76.

In February, 1921, the Board of State Affairs issued instructions to the assessor of Vernon parish directing him to place certain tentative average minimum values upon certain classes of property, among which were pine timber, stating that the state board would not accept lower average values than those named in the instructions.

The following is the classification and the valuation given for pine timber by said state board under said instructions to the assessors of the various parishes:

"Class A 20 M feet per acre or more $8.50 per M."

"Class B from 15 to 20 M feet per acre $8.00 per M."

"Class C from 10 to 15 M feet per acre $7.00 per M."

"Class D from 5 to 10 M feet per acre $6.50 per M."

"Class E 5 M feet per acre and under $5.50 per M."

"Adding $2.00 per acre for the land on which the timber stands. See pamphlet marked 'P-L.' "

The valuations for pine timber, under this method of the state board, is based upon the classification or amount of stumpage per 40-acre tracts; that is, all timber lands are required to be subdivided and returned by 40-acre subdivisions, and the stumpage thereon given, and, upon such return, classifications are fixed and a valuation placed upon the timber in each of such classes, upon each 40 acres.

[1] At the threshold of the discussion in this case as to the cash value of the timber in question, it may be well to quote the following citation from Cooley on Taxation (3d Ed.) p. 756: "In valuing land which is to be assessed as one parcel, the estimate should be of the whole, and not parts separately, and then added together." This rule is specially applicable to timbered lands in large tracts, and is in harmony with the universal custom of persons buying and selling and dealing in timber in this state of estimating the amount and value of the timber at a flat price per thousand feet, according to the amount on the entire tract, and then considering the cost of logging the whole or entire tract as a unit, and not the various subdivisions.

In order to get all of the timber off a certain tract, the lumberman has to log all of the tract. He has one tram road, and one set of log cars, engines, skidders, and loaders, and one mill for the entire` tract. Portions of the tract are necessarily more accessible than others. Certain areas of the tract are more heavily timbered than others, and the classification of the timber differs in different areas of the same tract. It is therefore impractical, if not impossible, to estimate separately the logging costs of each 40-acre subdivision of a tract of many thousands of acres, as in the present case.

In such cases the only reasonable and practical method is to estimate all of the timber on the tract as a unit, and estimate the price that the product of this timber, to wit, lumber, would be worth, and then ascertain the logging costs.

The value of the tract should be estimated as a unit, by estimating the value of the entire tract of timber in lumber, and then deducting therefrom the cost of logging the entire tract. This is necessarily true, for this is the accepted commercial method of ascertaining the value of timber, which is bought and sold by lumbermen upon no other basis in this state.

The defendants admit, however, that the values fixed by the state board do not take into consideration either the usual and customary method of ascertaining the value of timber in this state, nor the essential considerations of location, topography, accessibility, etc.

[2] The witnesses in this case have stated that the only difference in the value of a thousand feet of pine timber on any two tracts is the logging costs, and that the total logging costs for timber in Vernon parish varies from $1.50 to $2.75 per thousand feet, according to the tract, and never reaches $3 per thousand feet. Yet we find from the classifications made by the state board a difference in value of the pine timber on the same tract, supposedly due to the difference in logging costs, which varies by $3 per thousand feet.

Again, take "Class E 5 M. Feet per acre and under $5.50 per M.," and "Class D from 5 to 10 M feet per acre, $6.50 per M." Under these classifications the difference in valuation between two 40-acre tracts lying side by side is $1 per thousand, should one tract contain 5,000 feet per acre and the other 5,100 feet per acre, although the timber is comparatively uniform in quantity, and there is no difference in logging costs. This same objection of unjust valuation is applicable to any of the other classifications A, B, and C.

If we take 3,500 acres included in class B (15 to 20 M feet per acre) and averaging 16,500 feet per acre, and 3,000 acres in class E (5 M per acre and under) with an average of 2,000 feet per acre, it would be worth, according to the figures of the board: 3,500 acres at 16,500 feet per acre equals 56,000,000 feet at $8 equals $448,000. 3,000 acres at 2,000 feet per acre equals 6,000,000 feet at $5.50 equals $33,000. Total value equals $481,000. Yet the same tract with the same amount of timber, if placed in class D (5 to 10 M feet per acre) would then be valued, according to the board's figures, as follows: 6,500 acres with 62,000,000 feet at $6.50 per thousand equals $403,000. Here we have the same amount of land containing the same amount of timber, yet, under the state board's method of valuation in the one case the timber is estimated at $481,000 and in the other at $403,000, resulting in a difference of $78,000. This is a practical illustration of the injustice of applying the state board's method of classification and valuation of timber located on large tracts of land, however appropriate such method may be, when applied to small tracts, on account of the

accessibility of the timber, and the reduced cost of its logging and of its manufacture.

The Crowell & Spencer Lumber Company, plaintiff herein, the Alexandria Lumber Company, and the Meridian Lumber Company purchased 54,569 acres of timber, lying in the parishes of Vernon, Natchitoches, and Rapides. The last two named companies have similar suits pending, and are awaiting the decision in this case as determinative of their suits.

The plaintiff company returned its timber at $6 per thousand feet, or $73.22 per acre, in 1921, as its cash value. It appears that 39,000 acres of this tract of 54,569 acres acquired by said companies, averaging 12,000 feet per acre, was bought in December, 1916, at $5.78 per thousand feet, or $72 per acre. Six months later 15,000 acres of this 54,569-acre tract, averaging 10,000 feet per acre, was bought for $4 per thousand feet, or $40 per acre. The average price paid for all the land was therefore slightly more than $60 per acre and on credit. In 1921 the same property was returned for assessment at a cash valuation of $6 per thousand feet for all the timber, or $73.22 per acre, although the price for lumber for two years had fallen approximately one-half.

Under these facts and circumstances, and under the testimony of a number of experienced and successful lumbermen, who appeared as witnesses in this case, we find that the return to the assessor of Vernon parish of plaintiff company's timber lands and timber in said parish for the year 1921, at $6 per thousand feet, is a fair and reasonable cash valuation.

[3] The plaintiff has succeeded in reducing the assessment in this case to the value of the property as returned by it. It has been entirely successful in this respect. The attorney fees are therefore denied, the assessment having been reduced more than 25 per cent. of the reduction claimed, and the pres-

ent suit being an action for cancellation and, in the alternative, for reduction of the assessment. Shaw v. Watson, Tax Assessor et al. No. 25130, 151 La. 893, 92 South. 375, on the docket of this court.

Plaintiff attacks the local assessment of its property in the parish of Vernon on several grounds:

(1) That the assessment of plaintiff as returned by it and carried on the rolls of the assessor was altered and increased after the said rolls had been reviewed and approved by the parish board of equalization, and that such increase was made by the assessor without any notice to the plaintiff and without affording it an opportunity to be heard either before the assessor or before the parish board of equalization, and that therefore such increase is illegal and void.

(2) That, in the alternative, the assessment was made by the assessor long after the rolls of the parish had been closed and reviewed by the parish board of equalization. That, although plaintiff had made due return required by law, no notice of the making of such assessment was given, and that the making of said assessment after the rolls had been closed and the local assessments reviewed was illegal and void.

[4] It is true that the plaintiff made a return and that the timber was classified thereon as required by the tax authorities. Plaintiff's values, however, were below the minimum which either the State Tax Commission or the assessor of Vernon parish would accept. The assessment was therefore made by the assessor at an increased valuation over that rendered by plaintiff, but plaintiff contends that this was done after the completion and advertisement of the rolls.

There is no testimony to show that any officer or agent of plaintiff company examined its assessment, during the period said rolls were exposed for public inspection. There is a lack of testimony, therefore, upon the part

of plaintiff company, to prove that, during the period of public inspection, the assessment rolls showed valuation as returned by plaintiff. The assessor testifies, on the contrary, that no change was made in the valuation of plaintiff's property after the rolls were opened for inspection, and that the only change made in them consisted of a slight alteration as to description, which was effected in co-operation with the tax agent of plaintiff company, to whom only the "description" of the property was returned by the assessor for correction.

The assessor plainly and positively states that, after publication and exposure of the rolls, the estimate did not appear at a valuation of $6 per thousand feet, as returned by plaintiff company.

[5] Able counsel for plaintiff company have construed the word "figures," used by the assessor in his testimony, as relating to values, when they clearly refer to figures denoting stumpage, classification, etc. The onus probandi rests upon plaintiff company to show any illegal change in its assessment made after the exposure of the rolls, and it has clearly failed to make such proof. The testimony of the assessor makes it apparent that the valuation per thousand feet for plaintiff's timber was made by that officer before the advertising of the rolls and was maintained during their exposure, and not changed afterwards.

The attack made on the parish assessment on the above grounds is therefore without merit.

The third ground upon which the local assessment is assailed is that said assessment is an absolute nullity, because the assessor failed and refused to exercise any judgment or discretion in making the assessment, that he exercised no functions of his office, but blindly and mechanically complied with the instructions of other persons, and that plaintiff, being entitled to the free and uncontrolled judgment and discretion of the assessor, the said assessment was therefore absolutely null.

Plaintiff's counsel cite the case of Crowell & Spencer Lumber Co., Limited, v. Lafleur, 137 La. 772, 69 South. 170, where an assessment was made under the dictation of the police jury. In that case this court said:

"Where a discretion is confided to an officer, it must be exercised by himself, and cannot be exercised by some one else for him. 'In valuing property and performing other duties involving the exercise of judicial discretion, the personal judgment of the assessing officer is essential to a valid assessment. * * * The duty of assessing property for taxation must be performed by the assessor in person and cannot be delegated.' "

See, also, Marston v. Elliott, 138 La. 577, 70 South. 519; Soniat v. Board, 146 La. 450, 83 South. 760.

The authority and power of the Louisiana Tax Commission, formerly the Board of State Affairs, are fully set out in Act 140 of 1916 and all of 1918.

[6] Section 10 of Act 140 of 1916 as amended and re-enacted by section 1 of Act 211 of 1918 reads as follows:

"That it shall be the duty of the Board, and it shall have the power and authority: 1. To assess, for State purposes, all taxable property throughout the State of Louisiana, as authorized and required by Articles 225 and 226 of the Constitution. 2. To fix and equalize the value of said property for the purpose of collecting the State taxes, not to exceed its actual cash value; leaving to the lawful authorities of each parish or other subdivision levying, assessing and collecting taxes, full liberty to assess taxes on, and fix valuations at, less than actual cash valuation as they deem fit; provided that the percentage of the actual cash valuation of the property assessed in any parish, for other than State purposes, shall not fall below twenty-five per cent. of the actual cash valuation, as fixed by the Board for State purposes," etc.

In construing Act 140 of 1916, we said, in the case of Soniat v. Board, 146 La. 459, 83 South. 763:

"We find nothing in the provisions there quoted, or otherwise in the statute, which must necessarily be construed as indicating an intention to allow the local authorities less liberty of conscience and judgment in making particular assessments for * * * local taxation than is allowed the state board in making such assessments for * * * state taxation. Quite to the contrary; the statute, after making it the duty of the state board to fix and equalize the value of all taxable property in the state * * * for the purposes of state taxation, ex vi termini, leaves to the local authorities 'full liberty to assess taxes on, and fix valuations at, less than the actual cash valuation, as they deem fit.' "

The law of the case is plain, but, in our opinion, the facts fail to disclose that the state board dominated the assessor of Vernon parish or deprived him of his clear legal right to exercise his judgment and liberty of conscience in making the parish assessment of plaintiff company's property in this case.

[7] On page 8 of "Instructions to the Assessor for the 1921 Assessment," found at page 192 of the transcript, we find the classification and values of "Pine Lands." In the "Foreword" of these instructions, we find that the Board of State Affairs has fixed "tentative average minimum values" on certain classes of property for the guidance of assessors and parish boards of equalization in making the 1921 assessment. It is stated that—

"in fixing these values the board does not bind itself to maintain them but reserves the right to raise or lower these values in the event it should deem either course necessary. This right is reserved for the reason that the law requires that values be fixed by the Board of State Affairs after they have been made by the taxpayer, the assessor, and parish boards of equalization, and this fixing of values at this time is only done for the convenience of the assessors and in response to their request."

We find nothing in these instructions which make it the mandatory duty of the assessor to assess only particular percentage of the value on pine lands as fixed by the state board as the value of such lands for the purpose of local assessment. In this respect the assessor is left perfectly free to exercise his judgment within the limit of valuation prescribed by section 1 of Act 211 of 1918, and the valuation as fixed by the state board for state purposes is made by the law the basis upon which the assessor must act, in making his local assessment. The state board, under the law, originates the assessment for state purposes, and the assessor is left free to make his assessment for local purposes at any percentage of the state valuation he may deem fit, provided said local assessment is not below 25 per cent. of the state valuation. It is clear that under Act 211 of 1918 that the assessor can either use for local assessment purposes the valuation fixed by the state board for state purposes, or he can use a percentage of that valuation, not below 25 per cent.

[8] At page 67 of the transcript the assessor of Vernon parish testifies as follows:

"Q. How did you arrive at the figures for local purposes at which you placed the valuation on the Crowell & Spencer property?

"A. Well, I thought—I knew that these prices were fair and just and honest and should apply to all the companies and I used the same for local purposes.

"Q. Did you apply them because the State Board of Affairs stated they were fair and just?

"A. Not particularly because they said so, because I knew in my own reasoning that at the present prices they were just prices and I couldn't assess one company according to their sworn statement with timber—I couldn't assess one at one price and then value another company's at another."

This testimony clearly shows that the assessor exercised his own independent judgment in making the local assessment of plaintiff company's property in Vernon parish for the year 1921, and that he did not act as a mere instrument in the hands of the state board, as plaintiff company contends.

The demand for cancellation of the assessment on the grounds herein reviewed was properly rejected by the trial judge.

For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellant.

O'NIELL, J., concurs in the decree.

Rehearing refused by the WHOLE COURT.