SARTAIN, Judge.
At issue before us is the propriety of the denial of a writ of mandamus sought in the district court by Chrysler Financial Corporation and Chrysler Credit Corporation which would direct the Louisiana Tax Commission to rescind certain tax assessments levied against the latter’s accounts receivable for the year 1968.
This controversy is specifically concerned with Order Number 197 of the Tax Commission dated December 30, 1969, which directed the Sheriff and Tax Collector of the Parish of East Baton Rouge to increase the assessment of petitioners to $198,020 and with subsequent Order Number 288 by that Commission authorizing the previous assessment to be reduced by half, to $99,-010.00. These assessments were based entirely upon accounts receivable owned by plaintiffs and due them from the various dealers who finance their automobile inventories through Chrysler Credit Corporation.
To the extent that these accounts receivable are secured by chattel mortgages, plaintiffs claim the exemption accorded such secured accounts by Article X, Section 4, Paragraph 3 of the Louisiana Constitution of 1921. We must decide whether petitioners are entitled to the claimed exemption and, more particularly, whether the accounts receivable which have been assessed are secured by bona fide chattel mortgages.
The Constitutional exemption previously referred to is provided for in the following terms:
“The following property, and no other, shall be exempt from taxation:
3. * * * loans or other obligations secured by mortgage on property located exclusively in the State of Louisiana, and the notes or other evidence thereof; * * *” *484 Corporation, engages in the mass financing of automobiles for selected dealers in Chrysler products. The record and briefs of counsel adequately describe the means by which such large-scale financing is conducted.
*483 Chrysler Credit Corporation, a wholly owned subsidiary of Chrysler Financial
*484 It seems that upon its acceptance of a particular dealer, Chrysler Credit will finance the inventory of that retailer up to a pre-arranged monetary limit (a line of credit). Upon notification by the factory that a dealer has ordered certain automobiles, Chrysler Credit makes direct payment to it on behalf of the buyer.
Upon receipt of payment, the factory then advances the descriptive information on each automobile purchased to the office of plaintiff which services the particular dealer. There, according to uncontradict-ed testimony, a chattel mortgage is prepared on a standard commercial form which fully describes each and every vehicle paid for by Chrysler, thus securing all accounts receivable retained by that office.
Each chattel mortgage is prepared entirely by the plaintiff; it is executed in the office of Chrysler Credit on behalf of the dealer by an employee of the Credit Corporation acting under a power of attorney contained in a document captioned “Corporate Form Signatory Authorization”. This authorization, signed by each accepted dealer and retained by Chrysler, provides in pertinent part:
“The Undersigned, to induce you to finance our purchases, from time to time, of new motor vehicles, and to facilitate such financing and such purchases, does hereby appoint any of your officers or employees, designated by you, our attorneys-in-fact, in our name, to exemte and deliver to you in our behalf any document or evidence of indebtedness or title retaining or security instrument, or both, necessary to evidence and secure any indebtedness arising out of any such financing; * * * ” (Emphasis ours)
The mortgages are witnessed and, in most instances, acknowledged by one of the subscribing witnesses before a notary public, although it is conceded by plaintiff that, on some occasions, the notarization is performed out of the presence of the witnesses. The mortgages are recorded only when a dealer is in financial difficulty and are, otherwise, retained in the Chrysler Credit offices.
In its written reasons for judgment, the District Judge determined that the claimant had failed to bring itself within the ambit of the Constitutional exemption previously set out and concluded that the writ of mandamus should not be made peremptory. That Court found the procedures employed by Chrysler Credit and its dealers objectionable in that their agreement failed to evidence an express mandate from the dealer to the Credit Corporation to hy-pothecate the automobiles acquired by the dealer, that the mortgages secured the loans in form only, and that the arrangement, as a matter of law, violated certain agency principles. We are unable to sustain that ruling.
Counsel for the Tax Commission has urged upon us the proposition that plaintiffs’ mandamus proceedings should be dismissed due to its failure to comply with certain of the requirements of LSA-R.S. 47:1998 relative particularly to timely filing of its sworn list of taxable property. They cite this as a prerequisite to any relief which might be due to petitioners. This contention must fall, however, in view of the principles enunciated by our Supreme Court in the case of State ex rel United Seamen’s Service v. City of New Orleans, 209 La. 797, 25 So.2d 596 (1946) wherein we note the following:
“But, where a tax exemption is granted by the Constitution, the time within which a suit may be brought to declare the property exempt from taxation cannot be limited by an act of the Legislature. Taylor Brothers’ Iron Works Co. *485 v. City of New Orleans, 44 La.Ann. 554, 11 So. 3; Soniat v. Board of State Affairs, 146 La. 450, 83 So. 760. In the Taylor Brothers’ Iron Works Case the decision is expressed accurately in the syllabus, thus:
‘When the assessment is null and void, being in contravention of the constitution, the nullity of the assessment can be urged at any time.’
“This distinction, between statutes of limitation on the right to sue to annul an assessment, and statutes of limitation on the right to sue merely to reduce the amount of an assessment, is drawn clearly in Soniat v. Board of State Affairs, 146 La. at page 456, 83 So. at page 762, thus:
‘Where there is an alleged assessment of property that is exempt by law from taxation, or is not within the territorial jurisdiction of the assessor, * * * the limitation of time within which an action may be brought for its correction is inapplicable, and an action in nullity may be brought, without regard to such limitation; since such alleged assessment is not an assessment within the contemplation of the law, is not, and can never become, the basis for the levy of a valid tax, and may be annulled and canceled from the records, as may any other unwarranted in-cumbrance upon a title. * * * ’ ”
Plaintiffs here seek a constitutional exemption upon which no legislative time limitations may be imposed. In this connection, see also our opinion rendered this day in Ford Motor Credit Company v. Louisiana Tax Commission, et al., 251 So.2d 492 (1st Cir. La.App.1971).
The scheme by which Chrysler Credit Corporation and its dealer customers conduct their business is obviously designed to facilitate problems inherent in large-scale financing activities. That attempts were made to streamline these complexities does not invalidate the security agreements which Chrysler relied upon to protect their investments and we think that, as between Chrysler and its dealers, there was every intention that a valid chattel mortgage should exist in favor of the lender on each and every automobile financed; the record in this matter is plain that such was, and is, the case.
Before denying a tax exemption guaranteed by our Constitution, and upon evidence by the claimant that each and every loan was secured by a chattel mortgage, it was incumbent upon the Tax Commission to offer some proof that these transactions have, in law, been vain and useless acts and that the claimants have been conducting their business with no security whatsoever for their loans. We think they have failed to do this.
As previously mentioned, the chattel mortgages securing the loans were executed pursuant to the “Corporate Form Signatory Authorization”. The terms of that authorization, as previously quoted is clearly a mandate in favor of the Credit Corporation to execute such a security instrument as a chattel mortgage. To be resolved is whether the vesting of such power in a creditor is violative of any provision of our law.
Civil Code Articles 2985 and 2986 provide as follows:
Art. 2985. “A mandate, procuration or letter of attorney is an act by which one person gives power to another to transact for him and in his name, one or several affairs.”
Art. 2986. “The mandate may take place in five different manners: For the interest of the person granting it alone; for the joint interest of both parties, for the interest of a third person; for the interest of such third person and that of the party granting it, and, finally, for the interest of the mandatory and a third person.” (Emphasis ours)
Here, a dealer executes a mandate in the interest of itself and that of a *486 third party (Chrysler) which would seem to bring the act squarely within the fourth section of Article 2986. The weight of common law authority also indicates that where there is a full disclosure to a principal of any adverse interest which may exist on the part of an agent, that the agent may act despite his conflicting position. This is particularly true where the agency is merely attacked collaterally. 3 C.J.S. Agency § 139. Here, the principals have voiced no complaint as to Chrysler’s employee executing the chattel mortgages in their behalf and its appears that a full disclosure has been made to all concerned of the mandatary’s dual interests. We are cited no prohibition of such an arrangement in our law.
The trial court relied upon the case of Langlois v. Gragnon, 123 La. 453, 49 So. 18 (1909). The facts in that case, however, remove it from similarity to the case at bar as there was obviously not a full disclosure to the employer of the mandatary’s acts which were contrary to its own interest.
We are also cognizant of the requirement of Civil Code Article 2997(2) to the effect that the mandate must be “express and special” for the agent to “encumber or hy-pothecate” property. In view of the recent decision of Resweber v. Daspit, 240 So.2d 376 (3rd Cir. La.App.1970) which thoroughly reviewed the jurisprudence surrounding this codal provision, we have no difficulty in concluding that the language of the “Signatory Authorization” form is, indeed, express. There can be no doubt here that the dealer has granted a power to encumber or hypothecate although those exact words are not used.
The Tax Commission has also attacked the validity of the mortgages as executed upon the grounds that they do not meet the statutory requirements as to notarial authenticity and that they are seldom registered or recorded with the Vehicle Commissioner. They reason from this that the security instruments are null and void, as between the parties.
The testimony adduced at the trial indeed indicated that, on occasions, the documents were acknowledged by the acknowledging witness out of the presence of the Notary Public, but that on all occasions, the Notary knew the signature of the witness. It was also established that the mortgages were seldom recorded and that registration was made only when a dealer was in financial difficulty.
Initially, we must decide which of the statutory provisions relative to chattel mortgages should be applied. Counsel for both parties here have apparently concluded that LSA-R.S. 32:701 et seq., commonly referred to as the Vehicle Certificate of Title Law should control. However, our study of LSA-R.S. 32:704 and the jurisprudence interpreting that provision indicates to the contrary. We are here dealing with the sale and mortgaging of varying numbers of vehicles from the factory to the dealer. Section 704 contains these provisions:
“The provisions of this Chapter shall apply to the sale and chattel mortgaging of vehicles of the sort and kind required to be registered and licensed under the provisions of Chapter 4 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950, except that there is specifically excluded from the provisions of this Chapter the sale of a new vehicle prior to the first sale of such new vehicle to a user, as defined herein. Such exclusion, however, does not exempt from the provisions of this Chapter such first sale made to a user as defined herein. * * * ” (Emphasis ours)
In Commercial Securities Co. v. Hugh Roberson Motors, 229 La. 959, 87 So.2d 306 (1956), we find this commentary on that statute:
“We agree with the following quotation from the judgment of the trial judge:
‘The fundamental premise of the statute is stated in Section 704 providing that “there is specifically excluded *487 from the provisions of this Chapter the sales of a new vehicle prior to the first sale of such new vehicle to a user, as defined herein.”
‘This declaration of intent is clear and unambiguous and controls all that follows after it. In accordance with the background and reasons for the enactment of the legislation its purpose is to affect only vehicles that have entered into the general stream of public commerce. Its policy is not to affect new vehicles while they are yet in the ownership of the limited classes of manufacturers and dealers.’ ”
As the Vehicle Certificate of Title provisions are inapplicable, we must be guided by the general statutory provisions governing chattel mortgages. LSA-R.S. 9:5352 sets forth the requirements for the validity of a mortgage, as between the parties.
“Every chattel mortgage shall be in writing and the obligation secured thereby shall be described and the exact sum secured thereby shall be stated, or, if the same is to secure future advances, then the maximum amount thereof, shall be stated, and there shall also be stated whether the same be payable on demand or at what fixed or determinable future time. * * * ”
We fail to see how the mortgages executed by Chrysler and its dealers during 1968 do not meet the requirements of that statute and, indeed, there is no indication whatsoever in the record that the formalities necessary, as between the parties, for the perfection of valid mortgages have been overlooked. While it may be that the instruments were improperly authenticated notarially on occasions and that they were seldom registered, these are requirements of LSA-R.S. 9:5353 which specifically sets out that its provisions must be fulfilled in order to affect third persons. That statute has no bearing on mortgages, as between the parties, as it plainly states. Southern Enterprises v. Foster, 203 La. 133, 13 So.2d 491 (1943); Allstate Credit Plan of Houma, Inc. v. Fournier, 175 So.2d 707 (1st Cir. La.App.1965); Ideal Loan of New Orleans, Inc. v. Johnson, 218 So.2d 634 (4th Cir. La.App.1969). Further, those mortgages notarized outside the presence of the parties or a subscribing witness, while not authentic in form, nevertheless avail as private acts and are valid as between the parties. C.C. Art. 2235.
In view of the above principles, we find that to the extent that Chrysler Credit Corporation’s accounts receivable for the year 1968 were secured in the manner presently in question, they are entitled to the Constitutional exemption provided in Article X, Section 4, Paragraph 3. The decision of the district court is, therefore, reversed and remanded for the issuance of a peremptory writ of mandamus to the Louisiana Tax Commission in accordance with this judgment. All costs as permitted by law are assessed against the Louisiana Tax Commission.
Reversed and remanded.