(115 So. 51)

No. 28674.

## CROWELL & SPENCER LUMBER CO., Limited, v. POLICE JURY OF NATCHITOCHES PARISH et al.

July 11, 1927. Rehearing Denied Nov. 28, 1927.

*(Syllabus by Editorial Staff.)*

1. **Taxation** ⬨⟹348—Additional 15 per cent. deduction for nonapparent defects in timber, being valued for assessment, held properly disallowed.

In valuation of timber for tax assessment, where approximately 25 per cent. deduction was made for unmerchantable timber, a further deduction of 15 per cent. for nonapparent defects was properly disallowed.

2. **Taxation** ⬨⟹500—Attorneys for tax collector, in suit to annul timber assessment, were properly allowed only 5 per cent. commission, where assessment was reduced more than 25 per cent. (Act No. 140 of 1916, § 16).

Under Act No. 140 of 1916, § 16, where lumber company, suing to annul timber assessment, was successful in reducing assessment more than 25 per cent., attorneys for tax collector were properly allowed a 5 per cent., rather than a 10 per cent. commission on amount of taxes involved.

3. **Taxation** ⬨⟹500—Attorneys for tax collector, in suit for annulment of timber assessment, held entitled to commission only on balance found due after payment of admitted amount by plaintiff.

Where lumber company, suing for annulment of timber assessment, acknowledged liability for part of assessment, and tendered such portion, which was accepted, attorneys representing tax collector were entitled to commission only on balance between amount claimed and amount paid, and not entire amount of taxes alleged to be due.

### On Rehearing.

4. **Taxation** ⬨⟹348—Separate assessment of scattered dead timber held error.

In determining valuation of timber for tax assessment, it was error for assessor to go through tract and pick out dead trees which stood here and there, and assess them separately from live timber.

5. **Taxation** ⬨⟹348—Inaccessible dead timber of no commercial value should not have been considered in valuation of timber for tax assessment.

In valuation of timber for tax assessment, dead timber which remained after lumber company had removed all accessible dead timber was of no commercial value, and should not have been considered in determining valuation.

6. **Costs** ⬨⟹32(3)—Plaintiff, partially successful in lower court, is entitled to costs incurred in such court.

Plaintiff who was partially successful in court below is entitled to costs incurred in lower court.

7. **Costs** ⬨⟹234—Reduction on plaintiff's appeal of timber assessment to extent of $500 held sufficiently substantial to entitle plaintiff to costs (Act No. 229 of 1910, § 2).

In suit by lumber company to annul timber assessment, where, on appeal, amount of assessment was reduced approximately $500, there was a change sufficiently substantial to entitle plaintiff to costs of appeal, under Act No. 229 of 1910, § 2.

Appeal from Tenth Judicial District Court, Parish of Natchitoches; John F. Stephens, Judge.

Suit by the Crowell & Spencer Lumber Company, Limited, against the Police Jury of Natchitoches Parish and others. From the judgment, plaintiff appeals, and defendants pray for amendment of judgment. Judgment amended, and affirmed as amended.

Hakenyos, Provosty & Staples, of Alexandria, and Phanor Breazeale, of Natchitoches, for plaintiff.

Percy Saint, Atty. Gen., and M. L. Dismukes, of Natchitoches, for tax collector.

Cunningham & Cunningham, of Natchitoches, for defendants police jury and others.

ROGERS, J. The plaintiff lumber company brought this suit to annul the assessment for the year 1926 of its timber in the parish of Natchitoches; and, in the alternative, to reduce the amount and valuation of the timber.

The taxes based on the assessment as extended on the rolls amounted to $68,587.81. Of this amount, the tax debtor, subsequent to the filing of this suit, paid $51,262.32, which it admitted to be due.

The court below rejected the demand for annulment, reduced the assessment to the extent of $142,522.86, and gave judgment against the plaintiff company in the sum of $62,300.58, as the taxes due on the assessment so reduced, subject to a credit of $51,-262.32 previously paid. It ordered, also, 5 per cent. of the balance due for taxes be paid as attorneys' fees by the tax collector out of the taxes when collected, and not as a penalty against the tax debtor. Plaintiff appealed, and the defendants answered the appeal, praying for amendment of the judgment.

In this court, in oral argument, plaintiff abandoned all of its contentions, save the one involving the amount of standing pine timber actually on the land.

The live pine stumpage on plaintiff's land, as extended on the assessment rolls of the parish for the year 1926, was 251,235,000 feet. Plaintiff had rendered the stumpage as of date January 1, 1926, at 189,747,000 feet. The court below fixed it for the purpose of assessment at 230,152,895 feet. This was an increase over plaintiff's rendition to the taxing authorities of 40,404,895 feet, which, at $6.00 per thousand feet, represents a value for assessment purposes of $242,435.37. To this was added $10,717.77 as the value of the dead timber, not in controversy here, or a total of $253,153.14, which, deducted from the valuation in dispute—$395,676—resulted in the judgment reducing the assessment to the extent of $142,-522.86.

The plaintiff relies, mainly, upon the estimate furnished by James D. Lacey & Co., with offices in various large cities of the country. Defendants rely, primarily, upon the estimate of R. E. McKnight, a local estimator of many years' experience. It appears, also, that the defendants police jury and assessor of the parish, after the present action was instituted, employed Lemieux, Bros., well-known estimators of the city of New Orleans, to verify the McKnight report. They estimated about one-fifth of the timber owned by the plaintiff company in the parish. Their report was not offered in evidence by the defendants. It was, however, called for by the plaintiff company, through a subpœna duces tecum, which was discharged on the showing that the report was not in the possession of the defendants, and during the course of the trial, when the defendant assessor was on the stand as a witness. Upon defendants' objection, plaintiff's demand was refused, on the ground that the Lemieux estimate was not the basis of the assessment.

Notwithstanding his ruling, the district judge, in his reasons for judgment, declared that it was impossible to overlook the fact that the report of Lemieux Bros. must have failed to sustain the McKnight estimate (otherwise it would have been produced by the defendants), and he thought it would be unsafe to follow the latter estimate. For our own part, we think the Lemieux estimate should have been admitted in evidence. It was made for the purposes of this particular case, and, in so far as it could throw any light upon the disputed facts, it should have been before the court. The defendant assessor admitted, on cross-examination, that the McKnight estimate exceeded the Lemieux estimate, but the extent of the excess was not given. The court must infer that this particular piece of evidence was not produced by the defendants because it was most unfavorable to their contentions. In these circumstances, we must agree with the district judge that it would be unsafe to accept the McKnight report as decisive of the present issue.

The estimate of Lacey & Co. was made in the months of April, May, and June, 1926. It showed a total stumpage of live pine timber of 189,824,000 feet. This was a slight increase over the amount rendered by the plaintiff company as of date January 1, 1926. In arriving at their figure, Lacey & Co. deducted on the field all unmerchantable timber (i. e., timber with apparent defects), usually estimated at from 20 to 25 per cent. of the total stumpage. After doing this, they made a further deduction of 15 per cent. to cover all hidden defects.

The district judge refused to allow the deduction for hidden defects. He held that, after the allowance for all timber apparently defective, the Lacey report should have shown 223,322,241 feet of live timber, or a difference between their estimate and the estimate of the plaintiff company of 33,398,895 feet. He added to this difference 7,007,555 feet, as being the amount of timber cut between January and April, thus making up the 40,405,895 feet by which he increased this item of the rendition made by the plaintiff company.

The finding by the district judge that 7,007,555 feet was the amount of timber cut between January and April was a mistake. The error occurred because, at the time he prepared his opinion, the evidence, not being transcribed, was not before him, and he thought it was an admitted fact. The truth is, however, that this particular figure was arrived at in a calculation submitted by the plaintiff company in which it was attempting to show that, according to the method adopted by the judge in order to determine the number of feet in the timber, 196,754,555 feet should be accepted as representing 85 per cent. of the Lacey estimate as of date January 1, 1926; the difference between this amount and 189,747,000 feet as rendered by the lumber company being 7,007,555 feet.

[1] We are not prepared to say that the district judge was wrong in refusing to allow the deduction of 15 per cent. for nonapparent defects in the timber as called for in the Lacey report. The representatives of Lacey & Co. had previously excluded from their estimate all unmerchantable timber. This was done in accordance with a well-recognized custom as testified to by all the witnesses who had any knowledge on the point. McKnight stated he had never heard of an extra deduction for so-called unseen defects. The total deduction for unmerchantable timber in the Lacey report is 40 per cent. of the total estimate. This appears to us to be an exceedingly high allowance. As we understand the testimony in the record, the 20 to 25 per cent. deduction, according to the general rule, is to cover all unmerchantable timber, whether the defects are apparent or nonapparent. The representatives of Lacey & Co. have not indicated by what authority or rule they were guided in making the deduction of 15 per cent., and it appears to have been merely an arbitrary act on their part. We do not think this extra deduction can be allowed.

On January 1, 1926, the plaintiff company owned 20,120 acres of live pine timber in Natchitoches parish. The general average of this timber, according to the Lacey report, was 9,779 feet to the acre. If the total acreage be multiplied by the general average per acre, the result will be 196,754,555 as the number of feet owned by the lumber company as of date January 1, 1926. This is exclusive of the extra deduction of 15 per cent. for nonapparent defects. Disregarding this extra percentage, the number of feet of live pine timber for which the plaintiff company should be assessed is 231,475,900. This is 34,721,345 feet more than was set forth in the rendition of the company. In accordance with these figures, the assessment of plaintiff in dollars and cents should be as follows, to wit:

34,721,345 feet at $6.00 per M................ $208,328 07
Add dead pine................................ 10,717 77

Total ...................................... $219,045 84
Amount in controversy......... $395,676 00
Amount of raise................. 219,045 84

Reduction of assessment........ $176,630 16

Defendants, over plaintiff's objection, offered in evidence its severance tax returns showing the acreage denuded and the amount of timber cut for the years 1923, 1924, and 1925. The reports, although in the record, were not considered, apparently, by the district judge as having any probative value. For our own part, we do not think they furnish a safe guide to follow in reaching a conclusion in the controversy. Among the many reasons for this are, that the reports are made on timber scaled at the mill, and, in this particular case, the timber did not come exclusively from the fee lands, some of it was from small owners, and some from right, of way cut out for public roads. Since the rendition must be submitted on the 1st of April of each year, a semidenuded section is rendered as timbered land, and not as denuded land until it is completely cut out. The timber of the plaintiff company extends into the adjoining parishes of Rapides and Vernon, and timber from one parish is frequently shown on the returns from another parish.

[2, 3] The attorneys representing the tax collector claimed, under section 16 of Act 140 of 1916, a commission of 10 per cent. on the amount of taxes involved, to be paid by the plaintiff company; or, in the alternative, a commission of 5 per cent. to be paid over by the tax collector when the taxes and penalties are collected. Since the plaintiff company was successful in reducing its assessment more than 25 per cent., the district judge refused to allow a commission of 10 per cent. This was clearly correct under the terms of the statute itself. The attorneys, on their alternative demand, were awarded a fee of 5 per cent. to be paid out of the taxes collected. On December 28, 1926, after this suit was filed, the plaintiff company tendered to the tax collector $51,262.32 as the amount due for taxes according to its rendition to the authorities. The tender was accepted by the tax collector, who issued a receipt for the amount, with full reservation of the rights of the fisc. The balance due, after this payment, was $17,325.49. The 5 per cent. commission allowed defendants' attorneys was on this balance. They contend that it should have been on the entire amount of taxes alleged to be due, $68,587.81, irrespective of the payment made by the plaintiff company.

We agree with the district judge. The plaintiff company, by tendering $51,262.32, admitted that sum was due for its taxes for the year 1926. When the tender was accepted and payment made and received thereunder, the sole amount in dispute was the balance due between sum claimed and the amount paid, or, in figures, $17,352.49.

For the reasons assigned, it is ordered that the judgment appealed from be amended so as to reduce the assessment of the plaintiff company as it appears on the assessment rolls of the parish of Natchitoches for the year 1926 from $1,604,409 to the extent and in the sum of $176,630.16, leaving a final assessment of $1,427,778.84, upon which the taxes for said year, amounting to $60,751.39, are to be paid by plaintiff, and that defendants have judgment for said amount, subject to a credit of $51,262.32 paid on December 28, 1926, by the plaintiff company, with interest on said balance—$9,489.07—at the rate of 10 per cent. per annum from January 1, 1926, until paid.

It is further ordered that as thus amended the said judgment be affirmed.

### On Rehearing.

OVERTON, J. A rehearing was granted in this case upon the application of plaintiff, but was restricted to the question of the cor-

rectness or validity of the assessment of the dead timber and to the question as to who should pay the costs of this suit.

In our original opinion we erroneously considered and stated that there was no controversy here over the allowance by the trial court of $10,717.77 as the value of the dead timber in plaintiff's assessment. Hence the correctness of the action of the assessor in classifying the pine timber as "live" and "dead," and assessing the dead at $26,748, and of the ruling of the trial court, when it impliedly sustained this classification by fixing the value of the dead timber at $10,717.77 in reducing the assessment, was not inquired into.

In Crowell & Spencer Lumber Co., Limited, v. Word, 152 La. 455, 93 So. 678, where complaint was made as to the manner of assessing timber, though no dead timber was there involved, it was said:

"'In valuing land which is to be assessed as one parcel, the estimate should be of the whole, and not parts separately, and then added together.' This rule is specially applicable to timbered lands in large tracts, and is in harmony with the universal custom of persons buying and selling and dealing in timber in this state of estimating the amount and value of the timber at a flat price per thousand feet, according to the amount on the entire tract, and then considering the cost of logging the whole or entire tract as a unit, and not the various subdivisions."

[4, 5] In the case before us, that part of the assessment presently involved, as stated, is of dead timber. This timber is scattered over a large tract, though the larger percentage of it is found in those parts of the tract which has been turpentined. It was error for the assessor to go through the tract, pick out the dead trees, which stood here and there, and assess them separately from the live timber. Moreover, the record discloses that the dead timber, when the assessment was made, as of date January 1, 1926, had no commercial value. The trees had then been dead for some months. Prior to January 1, 1926, plaintiff, in an effort to remove the dead timber before it became too late to utilize it, and to protect the timber still living, removed all of the dead timber which was accessible. The dead timber that remained had no commercial value. As such was the case, we think that it should be eliminated from the judgment of the lower court, and our former decree should be amended accordingly.

Therefore, deducting the $10,717.77, the amount allowed in our former decree and in the judgment of the trial court, as the correct assessment for the dead timber, from the $1,427,778.84, found in our original opinion to be the correct total assessment, leaves as the proper total assessment, $1,417,061.07, upon which taxes for said year, amounting to $60,295.89, instead of $60,751.39, as originally found by us, are to be paid by plaintiff, subject to the credit of $51,262.32, resulting from a payment made by plaintiff on December 28, 1926, as found in our original opinion, with interest on the balance of taxes remaining due, said balance amounting to $9,033.57, instead of $9,489.07, as originally found, at the rate of 10 per cent. per annum, as formerly decreed.

[6, 7] The remaining question to be considered is the question of costs. As plaintiff was partially successful in the court below, it is entitled to the costs incurred in the lower court. Howcott v. Smart, 130 La. 699, 58 So. 515. As to the costs of this court, we think that a change, sufficiently substantial, has been made in the judgment rendered on appeal to entitle plaintiff to the costs of appeal. Act 229 of 1910, § 2. As our former decree remained silent on the question of the costs of appeal, perhaps no amendment as to those costs is necessary, but, nevertheless, we shall expressly fix the liability for them, while changing our former decree which had the effect of casting the costs of the lower

court upon plaintiff by affirming the judgment of that court in that respect.

For the reasons assigned, our former decree is amended so as to fix the correct total assessment at $1,417,061.07, upon which taxes for said year, amounting to $60,295.89, are to be paid by plaintiff, subject to a credit of $51,262.32, as the result of a payment made by it on December 28, 1926, leaving a balance due by plaintiff of $9,033.57, with 10 per cent. per annum interest thereon, and by casting defendants for the costs in both courts, and, as thus amended, our former decree is reinstated, and made the judgment of this court. It is further ordered that the right of defendants to apply for a rehearing upon the points here decided be reserved.